### A03A0389. HURT v. NORWEST MORTGAGE, INC.
(580 SE2d 580)

ELDRIDGE, Judge.

This is an appeal from a grant of a writ of possession. It arises from Rabun County Superior Court Civil Action No. 01-CV-245-C and is part of a nine-year, convoluted body of litigation between plaintiff Norwest Mortgage, Inc. ("Norwest")[1] and Judith F. Hurt, involving Hurt's refusal to surrender real estate and improvements located at Route 3, Box 3401-H, Clayton, previously foreclosed upon by Norwest for Hurt's failure to make mortgage payments. A rendition of the more pertinent facts of this case is necessary for its resolution.

In this leg of the litigation, Norwest filed an affidavit for a dispossessory warrant as to the contested property on June 11, 2001. A hearing was held on June 17, 2001. The trial court issued a writ of possession in favor of Norwest on June 27, 2001, and ordered Hurt to pay the costs of litigation and attorney fees, finding that Hurt "has been stubbornly litigious and has cost the plaintiff unnecessary trouble and expense." Hurt immediately filed an application for discretionary review in this Court. Finding that the dispossessory order was subject to direct, not discretionary appeal, we granted Hurt's

---

[21] See generally *White v. Arthur Enterprises*, 219 Ga. App. 124 (2) (464 SE2d 225) (1995).

[1] For consistency within this appeal, plaintiff/appellee will be referred to as "Norwest," although Dovenmule Mortgage, Inc. became successor in interest to Norwest at some point between September 2001 and June 2002.

application. On July 19, 2001, Hurt filed a notice of appeal in this Court as to the grant of the writ of possession.

Immediately following the trial court's ruling and prior to filing her appeal, Hurt filed an affidavit of indigence in this case, claiming "she is completely indigent and unable to pay the costs and attorney fees of this action, or to be able to post a bond if requested." This, although Hurt had informed the court at the earlier hearing that she had been regularly making payments on the contested property for a year and a half and intended to purchase said property. Hurt's affidavit contained neither a seal of attestation by the notary who allegedly signed the document nor a date on which such notary signed the document. In addition, Hurt's affidavit of indigence was traversed by Norwest through the filing of a counteraffidavit; there, in addition to noting Hurt's admission at trial, Norwest representative Nichole Carswell swore that "Defendant stated to me personally on June 27, 2001, that she would have no problem posting a supersedeas bond." Norwest then filed a motion seeking to force Hurt to pay rent, attorney fees, and court costs into the registry of the court. Hurt filed a response wherein she no longer claimed indigence as a reason against such payments into the court's registry but, instead, claimed that such payments were unnecessary because,

> the Defendant has been sending the monthly required mortgage payments directly to the Plaintiff; which have been held in escrow pending settlement of litigation. The Defendant has also paid property taxes, homeowner's insurance and substantial repairs to the property. . . . The Defendant has acquired a mortgage to pay off the Plaintiff in full.

On August 29, 2001, after considering the evidence, the trial court issued an order directing Hurt to pay rent, attorney fees, and court costs into the court's registry.

Thereafter, on September 4, 2001, Hurt and Norwest entered into a consent agreement which allowed Hurt to purchase the contested property at terms agreeable to her. The trial court issued a consent judgment reflecting the terms of the agreement. The judgment specifically stated that,

> The Defendant, Judith F. Hurt, filed an appeal of the Writ [of Possession] on July 19, 2001. . . . The Plaintiff and Defendant have since reached an agreement resolving all issues in this matter as evidenced by the consent of the parties hereto.

The consent judgment also reflected Hurt's agreement to "dismiss all pending appeals involving any case between Plaintiff and Defendant,

specifically the appeal of the Writ of Possession referenced herein." In addition, the judgment stated that,

> If the Defendant is unable to complete the purchase of the property within thirty-five (35) days from the date of this Order, the Court shall immediately issue a Writ of Possession.

The consent judgment was filed on September 7, 2001, and was signed by both Hurt and Norwest representative Carswell.

Purportedly in response to the terms of the consent judgment, the record before us contains a document captioned, "Motion to Withdraw Appeal," dated September 4, 2001, wherein Hurt ostensibly moved to withdraw her notice of appeal of the 2001 Writ of Possession filed in this Court. The document does not contain our filing stamp and is marked "copy." This Court's records do not show receipt of such document. However, the trial record also contains a "Request to Strike Motion to Withdraw Appeal," attempting to stop the earlier withdrawal of Hurt's notice of appeal of the 2001 Writ of Possession. This document was, in fact, filed in this Court on October 5, 2001, approximately a month after Hurt had agreed to withdraw her appeal per the consent judgment. Neither the motion to withdraw Hurt's appeal nor the "request to strike" the motion to withdraw Hurt's appeal was filed in the superior court.[2]

Nine months later, on June 19, 2002, Norwest filed an affidavit stating that Hurt had failed to tender the purchase price of the property; in addition, the affidavit stated that "Judith Hurt has failed to tender any sum of money or funds to [Norwest]." On August 8, 2002, pursuant to the consent judgment, an order granting Norwest a writ of possession was filed.

In response, Hurt filed a flurry of documents, including an August 28, 2002 "Motion to Vacate Consent Order"; a September 9, 2002 "Emergency Motion for Injunction and Temporary Restraining Order"; and a September 9, 2002 "Motion to Set Aside Consent Order." The gist of the arguments contained in each of these motions was jurisdictional in that, because Hurt filed a "request to strike" the motion to withdraw the notice of appeal before any "dismissal" was issued, an appeal is still pending in this Court which acts as supersedeas to any further action by the trial court, including the issuance of the consent judgment and the 2002 Writ of Possession.

On October 11, 2002, this Court finally received the superior

---

[2] Xerox copies of both documents appear in the trial record attached to the back of other pleadings, but do not appear as original documents individually filed in the superior court since they were ostensibly filed in this Court.

court records with regard to the 2001 Writ of Possession. Hurt's previously filed notice of appeal of the 2001 Writ of Possession was then docketed by this Court on October 15, 2002.

That same day, October 15, 2002, a hearing was held on the numerous motions Hurt filed in response to the 2002 Writ of Possession. Hurt failed to appear. On December 11, 2002, the trial court issued an order nunc pro tunc to October 15, 2002. The court concluded that the consent agreement and judgment entered thereon controlled. The trial court found that,

> The Consent Order specifically provided that Defendant was to dismiss all pending appeals involving any case between the parties including the Writ of Possession dated June 27, 2001. By virtue of her agreement to entry of the Consent Order as evidenced by her signature thereon, any appeal of the Writ of Possession dated June 27, 2001, is and has been dismissed.

Accordingly, the trial court determined that, since Hurt had not filed a new notice of appeal, the trial court retained jurisdiction over the case. The trial court denied all of Hurt's motions and specifically ordered that "Any and all appeals prior to the entry of the Consent Order dated September 4, 2001, and filed on September 7, 2001, are dismissed." *Held*:

1. It is the duty of this Court on its own motion to inquire into its jurisdiction to review the errors alleged on appeal.[3] In that regard, "a party not aggrieved by the judgment of the trial court is without legal right to except thereto, since he has no just cause of complaint."[4] With these principles in mind, we make the following findings of fact and conclusions of law.

(a) *Indigence.* Hurt's affidavit of indigence was invalid. The purported signature of the notary, "Linda Wood," is not dated so as to indicate the notary was present at the same time the affiant signed the document.[5] Nor does the affidavit contain a notary's seal, either stamped or embossed, so as to make the attestation valid.[6]

Further, the record shows that the trial court was utterly familiar with Hurt through numerous other litigations, including an eviction action filed by Norwest and countersuits filed by Hurt. Hurt orally stated at the dispossessory hearing in this case that she had

---

[3] *Reliance Ins. Co. v. Cobb County*, 235 Ga. App. 685 (510 SE2d 129) (1998).

[4] *Presidential Financial Corp. v. Francis A. Bonanno, Inc.*, 244 Ga. App. 430, 433 (1) (535 SE2d 809) (2000).

[5] *Sambor v. Kelley*, 271 Ga. 133 (1) (518 SE2d 120) (1999).

[6] OCGA § 45-17-6 (a) (1) ("A scrawl shall not be a sufficient notary seal. An official notarial act must be documented by the notary's seal.").

been making payments on the disputed property ("they have had a payment every month that I have been there") and that she was sufficiently solvent to obtain a mortgage loan for the property. In addition, Hurt admitted in her pleadings that she paid property taxes and homeowner's insurance and made substantial repairs to the property. Indeed, Hurt did not file an affidavit of indigence until *after* she was ordered to pay costs and attorney fees. And an affidavit traversing Hurt's claim of indigence was duly filed by Norwest, as was a motion to require Hurt to pay rent, attorney fees, and costs into the court's registry. In response to such motion, Hurt abandoned any claim of indigence and contended only that she was already making payments into an escrow account, thereby making payments into the court's registry unnecessary.

We find that the trial court's subsequent order which, in light of all of the above, required Hurt to pay rent, attorney fees, and costs into the court's registry is an explicit finding by the trial court that Hurt is not indigent. Hurt, herself, abandoned the claim in her pleadings, and facts of record clearly support the trial court's judgment, including the solemn admissions in judicio of Hurt wherein she stated she has funds. "[T]he trial court's ruling on all issues of fact concerning the ability of a party to pay costs is not subject to review (OCGA § 9-15-2 (b)) and a hearing is not required."[7] Moreover, a trial court's determination concerning indigence is not reviewable in cases where, as here, the affidavit of indigence has been traversed by an opposing affidavit.[8]

(b) *Supersedeas.* In pertinent part, OCGA § 5-6-46 states, "In civil cases, the notice of appeal filed as provided in Code Sections 5-6-37 and 5-6-38 shall serve as supersedeas *upon payment of all costs in the trial court by the appellant.*"[9]

> Ordinarily, the filing of a notice of appeal acts as supersedeas but only "upon payment of all costs in the trial court by the appellant," OCGA § 5-6-46 (a), or the filing of an affidavit of indigence. [Cit.][10]

---

[7] *Barham v. Levy*, 228 Ga. App. 594, 596-597 (4) (492 SE2d 325) (1997); *Morris v. Dept. of Transp.*, 209 Ga. App. 40 (432 SE2d 638) (1993).

[8] *Rolleston v. Estate of Sims*, 253 Ga. App. 182, 189 (9) (558 SE2d 411) (2001); *Saylors v. Emory Univ.*, 187 Ga. App. 460, 461 (1) (370 SE2d 625) (1988); *Quarterman v. Weiss*, 212 Ga. App. 563 (442 SE2d 813) (1994).

[9] (Emphasis supplied.) OCGA § 5-6-46 (a).

[10] *Dobbs v. Atkinson*, 238 Ga. App. 151, 152 (517 SE2d 597) (1999). Accord *Lott v. Arrington & Hollowell, P.C.*, 258 Ga. App. 51, 54 (2) (572 SE2d 664) (2002). Compare *Nest Investments v. Tzavaras*, 221 Ga. App. 282 (471 SE2d 223) (1996) (costs required to be paid after discretionary application granted and notice of appeal filed in order for notice of appeal to act as supersedeas).

Here, there is no indication in the record that Hurt paid all — or any — costs in the trial court with regard to an appeal of the 2001 Writ of Possession.[11]

> It is the primary responsibility of the appropriate parties and not this court to ensure that all documents relevant to the disposition of an appeal be duly filed with the clerk of this court prior to the issuance of our appellate decision.[12]

That Hurt failed to pay court costs related to the instant appeal is supported by evidence of Hurt's continued objection to paying the expenses of litigation into the trial court's registry and, after finally being ordered to do so, her subsequent settlement of all issues concerning the 2001 Writ of Possession through a consent agreement wherein the instant appeal was to be dismissed.

Nor can Hurt claim indigence in light of the facts and holding of Division 1 (a), supra. In fact, Hurt's subsequent admissions of solvency appear to render her earlier affidavit of indigence at best frivolous and at worst a fabrication. "The remedy for failure to file or frivolously filing a pauper's affidavit is not dismissal of the appeal but divestiture of the protection of the supersedeas."[13] There being no supersedeas for failure to pay costs, the trial court did not lose jurisdiction over this case.[14]

(c) *Consent Judgment.* Because the notice of appeal did not act as supersedeas and the trial court retained jurisdiction in this case, the court's consent judgment signed by the parties and reflecting the agreement between Hurt and Norwest was not invalid.[15] Thus, it is highly relevant that "[n]o litigant will be heard to complain of an order or judgment of the court which he procures or assists in procuring, unless it be made plainly to appear that the consent of the party seeking to complain was obtained by fraud or mistake."[16] Here, no such complaint of fraud or mistake was made, and so,

> [w]here, as here, the parties reached an agreement on all questions at issue, which agreement was reduced to writing, was styled an "order," and recited that it was signed in open

---

[11] See *Lott v. Arrington & Hollowell, P.C.*, supra at 54 ("there is no indication that defendant paid all costs in the trial court") (punctuation omitted).

[12] (Citation and punctuation omitted.) Id. at 53 (1).

[13] *Hubbard v. Farmers Bank*, 153 Ga. App. 497, 498-499 (265 SE2d 845) (1980).

[14] *Rockdale Awning &c. Co. v. Kerbow*, 210 Ga. App. 119, 120-121 (1) (435 SE2d 619) (1993); *Duncan v. Ball*, 172 Ga. App. 750, 751 (1) (324 SE2d 477) (1984).

[15] *Rockdale Awning &c. Co. v. Kerbow*, supra at 120-121; *Duncan v. Ball*, supra at 750-751.

[16] (Citation and punctuation omitted.) *Grayson v. Grayson*, 217 Ga. 133, 135 (1) (121 SE2d 34) (1961).

court by the judge, and was agreed to by counsel of the parties, and was unquestionably considered by all parties thereto, as well as the judge, to be an order of the court settling the questions involved, the parties consenting thereto will not be heard to question its validity.[17]

As to the 2001 Writ of Possession currently under appeal, Hurt specifically agreed that all issues with regard thereto are settled. The trial court's consent judgment, styled an "order," states that Hurt and Norwest "have since reached an agreement resolving all issues in this matter as evidenced by the consent of the parties hereto." The judgment was signed by Hurt. She is bound thereby. And, therefore,

[a] party not aggrieved by the judgment of the trial court is without legal right to except thereto, since [she] has no just cause of complaint. In this appeal, [Hurt] cannot be aggrieved by the trial court's judgment since it was entered with [her] consent. Moreover, the enumerations of error concern only the [2001 Writ of Possession] and do not challenge the terms, validity or enforceability of the judgment entered pursuant to the parties' consent agreement. OCGA § 5-6-48 (b) (3) provides an appeal may be dismissed "(w)here the questions presented have become moot." Such clearly is the situation in the case at bar. Thus [Hurt's] appeal must be dismissed.[18]

2. From the record, it appears that litigation could be ongoing for some time apparently due to Hurt's penchant for such in both state and federal court. In an effort to resolve at least some of the issues that repeatedly form the bases for Hurt's claims and in an attempt (perhaps in vain) to realize an end to this litigation sometime in the near future, we make the following findings of facts and conclusions of law based upon the record as it appears before us, the admissions of the parties, and the conclusions of other courts that have considered these issues.

(a) After the issuance of the 2002 Writ of Possession in Civil Action No. 01-CV-245-C (not the 2001 Writ issued in 01-CV-245-C currently under appeal herein), Hurt filed a "notice of removal" of this case to federal district court. After consideration thereof, the United States District Court for the Northern District of Georgia

---

[17] Id.

[18] (Citations and punctuation omitted.) *Riverdale Pools & Constr. v. Evans*, 210 Ga. App. 127 (2) (435 SE2d 501) (1993). Accord *Presidential Financial Corp. v. Francis A. Bonanno, Inc.*, supra at 433.

determined that a federal court has no jurisdiction to consider this case because (1) the federal courts do not have original jurisdiction over the subject matter of this case; (2) no federal question is presented herein; and (3) as the district court concluded, no violation of Hurt's civil rights occurred during the adjudication of this case.[19] The federal court remanded this case to Rabun County for resolution in state superior court. Accordingly, issues which would permit removal of this case to federal court are res judicata.

(b) The trial court denied Hurt's "Emergency Motion for Injunction and Restraining Order" seeking to prevent action on the 2002 Writ of Possession issued as a result of the consent judgment; in the same order, the court also denied Hurt's "Motion to Set Aside Consent Order" and a "Motion to Vacate Consent Order." The argument that formed the basis for each of these motions was the same, i.e., that Hurt's notice of appeal in this Court acted as supersedeas thereby removing jurisdiction from the trial court to enter the consent judgment, rendering that judgment void and, thus, precluding any action as a consequence thereof. We find that an appeal of the trial court's denial of these motions will not lie as the issues raised therein are rendered res judicata by Division 1 (a), (b), and (c) of this opinion.

(c) The time for the filing of a direct appeal as to the 2002 Writ of Possession issued in Rabun Superior Court Civil Action No. 01-CV-245-C has run. Thus, an appeal will not lie, since it would be untimely.

(d) Rabun County Superior Court Civil Action No. 97-CV-155-S filed by Hurt was dismissed. Hurt's application for discretionary appeal to this Court was denied as untimely.[20] Hurt's petition for certiorari in the Supreme Court of Georgia was denied.[21] This case had become final, and all issues therein are res judicata.[22]

(e) Rabun County Superior Court Civil Action No. 97-CV-453-S filed by Hurt was dismissed. A subsequent notice of direct appeal was dismissed.[23] Hurt's subsequent petition for certiorari in the Supreme Court of Georgia was denied.[24] This case has become final, and all the issues raised therein are res judicata.[25]

---

[19] *Norwest v. Hurt*, Civil Action No. 22:02-CV-0156, United States District Court, Northern District of Georgia (Gainesville).

[20] *Hurt v. Norwest Mtg.*, Case No. A01D0291.

[21] *Hurt v. Norwest Mtg.*, Case No. S01C1417.

[22] By "final," we mean a case in which a judgment has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. *Turpin v. Todd*, 268 Ga. 820, 831, n. 49 (493 SE2d 900) (1997).

[23] *Hurt v. Norwest Mtg.*, Case No. A00A1892.

[24] *Hurt v. Norwest Mtg.*, Case No. S00C1734.

[25] See note 18, supra.

(f) Originally, in 1994, Hurt filed for bankruptcy in order to prevent Norwest from foreclosing on the disputed property. On August 29, 1996, the bankruptcy court issued an order lifting the bankruptcy stay so that the foreclosure could proceed. On November 19, 1996, the bankruptcy court denied Hurt's motion for reconsideration of the lifting of the stay. On June 16, 1997, the United States District Court for the Northern District of Georgia denied Hurt's appeal. No further appeal was filed. This case is final, and all issues raised with regard to the propriety of the bankruptcy court's order permitting foreclosure on the property are res judicata.

(g) Hurt's failure to immediately move in the bankruptcy court for a stay of that court's order pending appeal permitted foreclosure to proceed.[26] Her notice of appeal to district court, alone, did not serve to prevent foreclosure.[27] And her request for a supersedeas bond also did not serve to prevent foreclosure, since the bond was not approved before foreclosure occurred.[28] "The stay is effective when the supersedeas bond is approved by the court."[29] OCGA § 9-12-16 concerning state judgments void for lack of jurisdiction is inapplicable and would not prevent foreclosure as permitted by the federal bankruptcy court. Accordingly, Hurt's claim that the foreclosure sale was without jurisdiction because her appeal of the bankruptcy court's order permitting the foreclosure was pending in district court is meritless.

(h) Following foreclosure, Hurt became a tenant at sufferance on the disputed property and subject to dispossessory action.[30]

(i) A challenge to the validity of foreclosure in defense of a dispossessory proceeding will not lie, because, after a foreclosure sale, the former owner cannot attack dispossession without first setting aside the foreclosure and deed.[31] Hurt's bases for attacking the foreclosure and deed are meritless, as discussed in Division 2 (g), supra. No further grounds were alleged and are thus waived.

(j) Hurt has no legal right of possession in the property. Accordingly, Hurt's purported "conveyance" of the property to third persons Carla R. Davalos and Malcolm Leon Cantrell and "leasing" of the property to herself as a third-party corporation, "The Tax Experts,

---

[26] See *Kahihikolo v. Gen. Finance Corp. of Ga.*; 807 F2d 1540 (11th Cir. 1987); *Sewanee Land, Coal & Cattle v. Lamb*, 735 F2d 1294 (11th Cir. 1984).

[27] *American Grain Assn. v. Lee-Vac, Ltd.*, 630 F2d 245 (5th Cir. 1980).

[28] USCS Bankruptcy Rule 8005.

[29] USCS Fed. Rules Civ. Proc. Rule 62 (d).

[30] *Marsh v. Resolution Trust Corp.*, 211 Ga. App. 216, 217 (1) (439 SE2d 75) (1993) ("[W]here the grantor . . . in a security deed remains in possession of the premises after lawful foreclosure of the deed, [she] is a tenant at sufferance and is subject to be summarily dispossessed by the purchaser at the foreclosure sale.") (citation and punctuation omitted).

[31] *Solomon v. Norwest Mtg. Corp.*, 245 Ga. App. 875 (1) (538 SE2d 783) (2000).

Inc.," cannot frustrate Norwest's execution of the writ of possession, since Hurt had no legal right upon which to ground such "conveyance" or "lease" in the first place. "The writ of possession shall not issue against third persons . . . who were *not* put in possession by and do *not* claim under or by virtue of any conveyance from [Hurt] in the action."[32] Accordingly, the writ may issue against Davalos, Cantrell, "The Tax Experts, Inc.," and any other third party obtaining their possessory status from Hurt.

> Finality is the goal and the essence of the doctrines of res judicata and estoppel by judgment. Both doctrines generally prevent an unsuccessful litigant from attempting to relitigate issues previously litigated by a court of competent jurisdiction.[33]

Here, repeated lawsuits have been filed, involving the same property, the same parties, and the same issues. Hurt, a pro se litigant, has demonstrated a level of understanding of applicable procedural law sufficient to keep this process continuing for nine years. However, abuse of the legal system is becoming apparent. While we cannot conclude that the law is indisputably clear that penalties should have been imposed up to this point, it now bears recognition by all parties and the courts that,

> [t]he statute books and case reports are replete with citations too numerous to mention where, in the civil arena, we have imposed penalties in various forms on litigants and attorneys who file and pursue frivolous lawsuits and appeals. That body of law shows that both the legislative and judicial branches of government have chosen to impose civil penalties to prevent the abuse of the legal system and to maintain the integrity of the legal process. The public is clamoring for more realistic approaches to justice that provide for fairness, expeditiousness, and finality.[34]

*Appeal dismissed. Johnson, P. J., and Mikell, J., concur.*

DECIDED MARCH 14, 2003 —
RECONSIDERATION DISMISSED MARCH 28, 2003 —

---

[32] (Emphasis supplied.) OCGA § 44-11-15.

[33] *Jim West Housemovers v. Cobb County*, 259 Ga. 314 (380 SE2d 251) (1989).

[34] *Fields v. State*, 189 Ga. App. 532, 537 (376 SE2d 912) (1988) (Benham, J., concurring in part).

Judith F. Hurt, *pro se.*
*McClure, Ramsay, Dickerson & Escoe, Bambi N. Carswell*, for appellee.