Branch, Judge.
After James Hawkins died unmarried and intestate in 2012, his girlfriend, Yuvette Ridley, filed a petition for letters of administration naming her as the estate’s administrator and listing her son Makaleb, whom Hawkins had never adopted, as Hawkins’s only heir at law. The probate court granted the petition and named Ridley as the estate’s administrator and Makaleb as Hawkins’s sole heir. Hawkins’s sister, Patricia Hutchins, then moved to set aside this judgment. Following a hearing, the probate court held that Hawkins was not the child’s biological father and that the child was not Hawkins’s heir at law. The court also removed Ridley as the estate’s administrator and appointed Hutchins in her stead. On appeal from this judgment, Ridley argues that when Hawkins executed a paternity acknowledgment and obtained the listing of his name as the father on the child’s birth certificate, he complied with the provisions of OCGA § 53-2-3 and made Makaleb his heir at law. We disagree and therefore affirm.
“Where a probate court sits as a finder of fact, we accept its findings if they are supported by any evidence. The probate court’s application of the law is subject to de novo appellate review, however.” In re Estate of Price, 324 Ga. App. 681 (751 SE2d 487) (2013) (citations omitted).
So viewed, the record shows that shortly after Ridley became pregnant by another man, she told Hawkins, her boyfriend, that he was not the biological father of the child. Hawkins himself never believed that he was the child’s biological father. Hawkins continued his relationship with Ridley nonetheless, purchasing maternity clothes and paying for her doctor’s visits. Hawkins was present at the birth of the child. On the day after the birth, the couple went to a State Vital Records Office and completed a State of Georgia Paternity Acknowledgment form. As to paternity, the form stated that “[t]his Acknowledgment attests that James Andrew Hawkins is the natural father of *437 the child born on the 25th day of June 2007,” and that Ridley and Hawkins were “requesting to have the name of the natural father entered on the birth certificate and the child be named Makaleb James Andrew Hawkins.” Both Ridley and Hawkins signed this portion of the form.[1] The second portion of the form, which contains two more signature spaces, specified that “by signing below, [Ridley and Hawkins] voluntarily consent and agree that the relationship between the named child and father shall be considered legitimate for all purposes under the law pursuant to OCGA § 19-7-22 (g) (2).”[2] 3Both Ridley and Hawkins also signed this portion of the form, which stated at its conclusion that “this affidavit must be signed by the mother and the person to be identified as the father in the presence of a witness as set forth in OCGA § 31-10-9 [(e)] (2).”[3]
Eloise DeLaine, a worker at the records office, signed the paternity acknowledgment form as a witness. DeLaine’s name also appears on the child’s birth certificate, which bears the names of Ridley as *438 mother and Hawkins as father. A few days after the child’s birth, Hawkins took a paternity test, which confirmed that he was not the child’s biological father. Nevertheless, Hawkins held Makaleb out as his son, and he named the child as a dependent on his applications for Veterans Administration and Social Security benefits.
After Hawkins died intestate on April 11, 2012, Ridley filed a petition in DeKalb County Probate Court for letters of administration naming Makaleb as Hawkins’s only heir. On May 22, 2012, the probate court issued letters of administration to Ridley. On June 1, 2012, Hawkins’s sister, Patricia Hutchins, filed the instant verified petition to determine heirs and a motion to set aside the probate court’s judgment and to replace Ridley as the estate’s administrator.[4]
At the evidentiary hearing on Hutchins’s petition held on July 23, 2012, Ridley introduced the paternity acknowledgment into evidence. Hutchins objected to Ridley’s characterization of the acknowledgment as an “affidavit,” arguing that it did not amount to a “sworn statement attesting to the parent-child relationship” as required by OCGA § 53-2-3 (2) (A) (iii), the statutory provision governing the rights of inheritance through the father by children born out of wedlock. Hutchins introduced into evidence her petition for guardianship and conservatorship of her mother as well as Hawkins’s paternity test results.
After the hearing, the trial court entered an order concluding that the paternity acknowledgment did not succeed in rendering Makaleb Hawkins’s heir at law. The trial court held that although Ridley and Hawkins had executed a paternity acknowledgment, “this method for legitimating a child does not apply in the present case.” The trial court concluded that Hawkins “was not the biological father” of Makaleb, that Makaleb “is not an heir at law of” Hawkins, and that “no method” of “establishing a right of inheritance for a child born out of wedlock” as provided in OCGA § 53-2-3 “applies in this case.” The court also designated Ella Hawkins as the decedent’s “sole heir at law,” removed Ridley as administrator on the ground that she had “signed [the] paternity acknowledgment with the knowledge that the decedent was not the biological father” of the child, and appointed Hutchins in Ridley’s stead. Ridley then moved for reconsideration, proffering an affidavit from DeLaine attesting that she worked as a medical records analyst at the hospital where the birth took place, that she had “signed and witnessed” the paternity acknowledgment, and that she had certified Makaleb’s birth certificate. The trial court denied the motion for reconsideration.
*439 On appeal, Ridley argues that the trial court erred when it concluded that Makaleb is not Hawkins’s heir at law because Hawkins “signed a sworn statement attesting to [his] parent-child relationship with Makaleb” and “effectively’ signed the child’s birth certificate. We disagree.
OCGA § 53-2-3 provides in relevant part:
(2) (A) A child born out of wedlock may not inherit from or through the child’s father, the other children of the father, or any paternal kin by reason of the paternal kinship, unless: (i) [a] court of competent jurisdiction has entered an order declaring the child to be legitimate, under the authority of Code Section 19-7-22 or such other authority as may be provided by law; (ii) [a] court of competent jurisdiction has otherwise entered a court order establishing paternity; (iii) [t]he father has executed a sworn statement signed by him attesting to the parent-child relationship; (iv) [t]he father has signed the birth certificate of the child; or (v) [t]here is other clear and convincing evidence that the child is the child of the father.
(Emphasis supplied.)
Ridley has not asserted, either below or on appeal, that the execution of that portion of the paternity acknowledgment purporting to legitimate the child succeeds in doing so such that the requirements laid out in OCGA § 53-2-3 do not apply. Under our responsibility to read this and other statutes “not in isolation, but in the context of the other statutory provisions of which it is a part,” Abdel-Samed v. Dailey, 294 Ga. 758, 763 (2) (755 SE2d 805) (2014) (citation omitted), we also note that neither OCGA § 19-7-22 (g) (2) nor OCGA § 19-7-46.1 specifies that a voluntary acknowledgment of paternity and/or legitimation renders the requirements of OCGA § 53-2-3 inapplicable as a matter of law. As there were no court proceedings begun before Hawkins’s death either to legitimate Makaleb or otherwise to establish paternity under subsections (2) (A) (i) and (ii), the only questions remaining are thus whether the paternity acknowledgment amounted to “a sworn statement signed by’ Hawkins “attesting to the parent-child relationship” or whether the presence of Hawkins’s name on the birth certificate amounted to his signature for purposes of OCGA § 53-2-3 (2) (A).[5]
*440 1. The paternity acknowledgment signed by Ridley and Hawkins was not a “sworn statement” for purposes of OCGA § 53-2-3 (2) (A) (iii).
To swear is both “to administer an oath to a person” and “to take an oath.” Black’s Law Dictionary, 9th ed. 2009. Thus a sworn statement, such as an affidavit, is “a statement under oath taken before a person having authority to administer such oath.” Sambor v. Kelley, 271 Ga. 133, 134 (1) (518 SE2d 120) (1999) (punctuation and footnote omitted); see also Shiver v. Norfolk-Southern R. Co., 269 Ga. 168, 169 (496 SE2d 903) (1998) (defining “testimony” as “[a] statement made by a witness under oath or affirmation” (citation and punctuation omitted)). Both judges and notaries public have the power to administer oaths. See OCGA § 15-1-3 (5) (“[e]very court” has power “to administer oaths in an action or proceeding pending therein and in all other cases when it may be necessary in the exercise of its powers and duties”); OCGA § 45-17-8 (a) (granting notaries public authority to “[w]itness or attest signature or execution of deeds and other written instruments,” to “[ajdminister oaths and affirmations in all matters incidental to their duties as commercial officers and all other oaths and affirmations which are not by law required to be administered by a particular officer,” and to “[wjitness affidavits upon oath or affirmation”).
Here, and despite the paternity acknowledgment’s statement that it amounted to an “affidavit,” there was no evidence before the probate court, including the evidence presented on Ridley’s motion for reconsideration, to support the conclusions that DeLaine, the witness to Ridley and Hawkins’s execution of the paternity acknowledgment, was a notary public or other official such that she had authority to administer any oath to Hawkins; that DeLaine administered an oath on Hawkins; or that the acknowledgment was actually notarized by her or any other person. It follows that the probate court did not err when it concluded that the paternity acknowledgment was not a “sworn statement” for purposes of OCGA § 53-2-3 (2) (A) (iii). See Dockery v. State, 287 Ga. 275, 277 (4), n. 2 (695 SE2d 599) (2010) (documents entitled “affidavits” were not such because they “were not executed with any of the legal formalities required of a valid affidavit”); OCGA § 45-17-6 (a) (“An official notarial act must be documented by the notary’s seal”); Hurt v. Norwest Mtg., 260 Ga. App. 651, 654 (1) (a) (580 SE2d 580) (2003) (an affidavit of indigence missing a notarial seal invalidated the attestation in the affidavit).
2. Although documentary and testimonial evidence showed that Georgia birth certificates do not normally bear the signature of either the mother or the father of the named child, it is undisputed that Hawkins never signed Makaleb’s birth certificate. “[T]he ‘golden rule’ of statutory construction... requires us to follow the literal language *441 of the statute unless it produces contradiction, absurdity or such an inconvenience as to insure that the legislature meant something else.” Telecom*USA v. Collins, 260 Ga. 362, 363-364 (1) (393 SE2d 235) (1990) (citation and punctuation omitted). We are not authorized to ignore the plain language of OCGA § 53-2-3 (2) (A) (iv) requiring Hawkins to sign Makaleb’s birth certificate in order to render Makaleb his heir at law. See In re Estate of Garrett, 244 Ga. App. 65 (534 SE2d 843) (2000) (where there was no judicial determination of paternity before a child’s death intestate, and where the father did not sign the child’s birth certificate or execute a sworn statement of paternity before that event, a probate court’s finding of paternity after the child’s death did not satisfy the requirements of OCGA § 53-2-4 (b));[6] State v. Barnett, 136 Ga. App. 122, 123 (220 SE2d 730) (1976) (absence of affiant’s signature from a search warrant required suppression of the evidence seized under that warrant).
Because Hawkins neither executed a sworn statement of paternity nor signed Makaleb’s birth certificate before his death, the trial court did not err when it concluded that Makaleb was not Hawkins’s heir at law. OCGA § 53-2-3 (2) (A) (iii), (iv); see also Estate of Garrett, 244 Ga. App. at 65 (putative father’s failure to establish paternity before child’s death precluded father’s inheritance from that child).

Judgment affirmed.

Barnes, P. J., concurs. Boggs, J., concurs fully and specially.

 At the time the paternity acknowledgment before us was executed, OCGA § 19-7-46.1 provided in relevant part:
(b) When both the mother and father have signed a voluntary acknowledgment of paternity and the acknowledgment is recorded in the putative father registry estahlishedby subsection (d) of Code Section 19-11-9, the acknowledgment shall constitute a legal determination of paternity, subject to the right of any signatory to rescind the acknowledgment prior to the date of the support order, any other order adjudicating paternity, or 60 days from the signing of the agreement, whichever is earlier. Recording such information in the putative father registry shall constitute a legal determination of paternity for purposes of establishing a future order for support, visitation privileges, and other matters under Code Section 19-7-51.
In 2008, OCGA § 19-7-46.1 (b) was amended to add that “[acknowledgment of paternity shall not constitute a legal determination of legitimation pursuant to Code Section 19-7-21.1 or 19-7-22.” Ga. L. 2008, p. 667, § 6.

 OCGA § 19-7-22 (g) (2) provides: “In any voluntary acknowledgment of paternity which has been made and has not been rescinded pursuant to Code Section 19-7-46.1, when both the mother and father freely agree and consent, the child may he legitimated by the inclusion of a statement indicating a voluntary acknowledgment of legitimation.” OCGA § 19-7-21.1 (b), which became effective on July 1, 2008, provides:
Prior to [a] child’s first birthday, a father of a child born out of wedlock may render his relationship with the child legitimate when both the mother and father have freely agreed, consented, and signed a voluntary acknowledgment of paternity and an acknowledgment of legitimation which have been made and have not been rescinded pursuant to Code Section 19-7-46.1. The State Office of Vital Records shall provide notice, in writing, of the alternatives to, legal consequences of, and the rights and responsibilities of signing a voluntary acknowledgment of legitimation.

 OCGA § 31-10-9 (e) provides in relevant part that “[t]he name of the natural father or putative father shall be entered on the certificate of live birth,” on condition that “(2) If the mother is not married at either the time of conception or at the time of birth, the name of the putative father shall not be entered on the certificate of birth without the written consent of the mother and the person to be named as father[.]”

 Hutchins had also petitioned the probate court to become the conservator for Ella Hawkins, the incapacitated mother of both Hutchins and Hawkins.

 Ridley has not raised, and we therefore do not address, whether there was “other clear and convincing evidence” before the probate court that Makaleb was “the child of” Hawkins for purposes of OCGA § 53-2-3 (2) (A) (v).

 OCGA § 53-2-4 (b) authorizes inheritance from an intestate child born out of wedlock to that child’s father or other paternal relations if (1) a court has “entered a court order declaring the child to be legitimate” or (2) “entered a court order establishing paternity”; (3) “[t]he father has, during the lifetime of the child, executed a sworn statement signed by the father attesting to the parent-child relationship”; (4) “[t]he father has, during the lifetime of the child, signed the birth certificate of the child”; or (5) “[a] presumption of paternity... has been established and has not been rebutted by clear and convincing evidence.”