**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 16, 2016**

# In the Court of Appeals of Georgia

A16A1244. RAY MASHBURN HOMES, LLC et al. v.
    CHARTERBANK.

McFADDEN, Judge.

Ray Mashburn Homes, LLC, Ray M. Mashburn, and Jan O. Mashburn appeal

the grant of summary judgment to Charterbank in this suit on two promissory notes

and a guaranty. They argue that the correct interest rate on the business's loan is a

disputed issue of fact, but we find that the promissory note unambiguously set forth

the interest rate. The appellants argue that the proper amount of damages is in dispute

due to discrepancies in the bank's evidence. We are constrained to agree. But the

discrepancy in the evidence of damages on the Mashburns' loan works to their favor,

so they have no legal right to complain. The discrepancy in the evidence of damages

on the business's loan, on the other hand, means that material issues of fact exist as

to the amount of damages. We therefore affirm the grant of summary judgment to the bank on the issue of liability on both notes and the guaranty, affirm the grant of summary judgment to the bank on the issue of its damages on the Mashburns' loan, reverse the grant of summary judgment to the bank on the issue of its damages on the business's loan and the guaranty, and remand the case for proceedings not inconsistent with this opinion.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant." *Nelson v. Hamilton State Bank*, 331 Ga. App. 419 (771 SE2d 113) (2015) (citation omitted). So construed, the record shows that on June 27, 2007, Ray Mashburn Homes, LLC executed a promissory note to Charterbank's predecessor in interest in the amount of $327,702.99. The note provided a variable rate of interest, defined as .5 percent above "Lender's Prime, the base rate used by Lender to set interest rates at which loans are made to various borrowers." On July 8, 2008, Ray and Jan Mashburn executed a promissory note to Charterbank's predecessor in interest in the amount of $296,359 with a 5.5 percent

2

interest rate. Both notes were secured by real property and Ray Mashburn guaranteed the business's obligation.

The appellants defaulted on their obligations, and the bank foreclosed on the property securing the promissory notes. It then filed this action for the balance due. The trial court granted the bank's motion for summary judgment.

1. *Interest rate.*

On appeal, the appellants argue that the trial court erred in granting summary judgment because the evidence created a disputed issue of fact regarding the interest rate on the business's loan. Therefore, they argue, the amount owed on the note – and the amount of the bank's damages – is in dispute. We disagree because the note itself unambiguously sets forth the interest rate as the bank's base lending rate plus .5 percent:

**INTEREST**: I agree to pay interest on the outstanding principal balance from 06/27/2007 at the rate of 8.750 % per year until INDEX RATE CHANGES.

**Variable Rate**: This rate may then change as stated below.

**Index Rate**: The future rate will be 0.50 % ABOVE the following index rate: Lender's Prime, the base rate used by

3

Lender to set interest rates at which loans are made to various borrowers.

**Frequency and Timing**: The rate on this note may change as often as daily. A change in the interest rate will take effect the day the index rate changes.

The appellants argue that the affidavit of William H. Gafford, Jr. creates a question of fact as to what is meant by Lender's Prime. Gafford served as the predecessor bank's president and chief executive officer, and was a director from November 2002 until August 2008. In his affidavit, he testified that the bank used the term Lender's Prime to refer to the United States prime interest rate as published by the Wall Street Journal, and that the United States prime interest rate changed to 3.25 percent on December 16, 2008, and has remained at 3.25 percent since that time.

Gafford's testimony, however, simply contradicts the unambiguous definition of Lender's Prime in the note itself: "the base rate used by Lender to set interest rates at which loans are made to various borrowers." "A promissory note is an unconditional contract to pay, and parol evidence cannot be admitted to alter its terms." *Kothari v. Patel*, 262 Ga. App. 168, 175 (4) (585 SE2d 97) (2003) (citation omitted). Here, the rate of interest was clearly set out in the note as .5 percent above

4

the bank's base lending rate. And the bank presented evidence of the base lending rate during the life of the loan, including the affidavit of Nicholas Clark, who was the chief financial officer of the bank's predecessor from November 2002 until March 26, 2010, and is now a senior vice president of the bank. Clark testified that the bank's Lender's Prime was the same as the Wall Street Journal prime rate until December 2008, when the executive committee of the bank voted to hold "Lender's Prime at 4.00 percent while WSJ Prime declined to 3.25 percent." According to Clark, in February 2009, the executive committee of the bank increased Lender's Prime to 6 percent. Clark testified that Gafford was not privy to the rates the bank set for Lender's Prime following his August 2008 departure from the bank.

Clark attached to his affidavit the minutes of a December 16, 2008, executive committee meeting, which reflected the decision to hold the rate at 4 percent; the minutes of a December 30, 2008, executive committee meeting, which reflected a proposal to increase Lender's Prime from 4 percent to 6 percent; the minutes of a January 6, 2009, executive committee meeting, which reflected the decision to increase Lender's Prime to 6 percent; and the minutes of a January 13, 2009, executive committee meeting, which reflected that the change in Lender's Prime became effective January 12. Clark also attached a January 14, 2009, schedule of

interest rates that reflected the Wall Street Journal Prime Lending Rate of 3.25 percent and the Lender's Prime Rate of 6 percent.

"Although [at the time they entered the note] the future monthly-determined rate could not be known in advance, the parties agreed that it be this particular rate, for which there was an established mechanism for its determination." *1600 Capital Co. v. Bankers First Federal Sav. & Loan Assn.*, 187 Ga. App. 504, 506 (370 SE2d 668) (1988).

> [W]here a written contract is plain and unambiguous, it is the only evidence of what the parties intended and understood by it. In the absence of fraud, accident or mistake, parol evidence cannot be considered to alter or vary the terms of a promissory note. . . . The promissory note at issue here is not ambiguous, and [Gafford's] representations regarding [the interest rate] are inadmissible to vary its terms.

*Parker v. Cook*, 248 Ga. App. 621, 622 (548 SE2d 387) (2001) (citations and punctuation omitted).

2. *Damages calculations.*

The appellants argue that the trial court erred in granting summary judgment because there are conflicts in the evidence regarding the calculation of damages. We affirm the grant of summary judgment on the Mashburns' loan because the conflict

6

in the evidence works to their favor. We reverse the grant of summary judgment on the business's loan and the guaranty because the discrepancy in the bank's evidence creates a material issue of fact.

(a) *The Mashburns' loan.*

The Mashburns argue that there is a question of fact about the bank's calculation of damages on their loan. They point to a conflict between two exhibits attached to the affidavits of James Chandler, a special assets manager of the bank. Chandler describes one of the two exhibits as the payment history for the note since May 24, 2004. The payment history includes a "loan history card," dated July 25, 2008, which reflects a payoff amount of $297,264.53.

The second of the two exhibits to which the Mashburns point is a spreadsheet that shows Chandler's calculations to determine the amount owed. For July 25, 2008, the date of the loan history card, the spreadsheet reflects a remaining balance of $297,173.99, $90.54 less than the amount shown on the loan history card.

The bank has provided no explanation for this discrepancy in its records. Nonetheless, the discrepancy works to the appellants' favor: the trial court awarded damages based on Chandler's affidavit and his calculations in the spreadsheet, which included the lower principal balance. "[A] party not aggrieved by the judgment of the

trial court is without legal right to except thereto, since he has no just cause of complaint." *Hurt v. Norwest Mortg.*, 260 Ga. App. 651, 654 (1) (580 SE2d 580) (2003) (citation omitted).

(b) *Business's loan.*

The appellants argue that, even assuming that Lender's Prime is not tied to the Wall Street Journal rate, there is a conflict in the evidence regarding the calculation of damages on the business's loan. They contrast the affidavit of bank executive Nicholas Clark, in which he testifies that the bank increased Lender's Prime to 6 percent in February 2009, with the bank's calculation of damages which shows an increase in the interest rate to 6.5 percent (Lender's Prime of 6 percent plus .5 percent) on January 12, 2009, which is consistent with the minutes of the January 13, 2009 executive committee meeting. We agree that there is a question of fact regarding the proper rate of interest from January 12, 2009, until February 1, 2009.

> While there may be an explanation for [this discrepancy, the bank] does not offer one, even though it bears the burden of proving its damages in a definite and certain amount. And because the discrepanc[y is] material to the amount of unpaid principal [since foreclosure proceeds were applied to interest first ], interest, and contractual attorney fees (which are calculated as a percentage of the principal and interest ) owed by the appellants, we conclude that material issues of

8

fact exist as to the amount of damages. *Patrick Malloy Cmtys., LLC v. Cmty. & S. Bank*, 334 Ga. App. 76, 83 (2) (778 SE2d 242) (2015) (citation omitted). Accordingly, we reverse the grant of summary judgment to the bank as to the amount of damages owed under this note and guaranty, and remand the case for proceedings not inconsistent with this opinion

*Judgment affirmed in part and reversed in part, and case remanded. Miller, P. J., and McMillian, J., concur.*

9