**FIRST DIVISION
BARNES, P. J.,
LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 3, 2023**

# In the Court of Appeals of Georgia

A23A0827. IN RE ESTATE OF MARVIN MOBLEY, JR., DECEASED.

WATKINS, Judge.

Marvin Mobley, Jr. ("Mobley") died intestate in December 2020. Alicia Rhodes and Ryan Rhodes (the "Appellants") appeal from the probate court's order that determined Mobley's heirs. They contend that the probate court erred in finding that: (1) the Appellants failed to demonstrate by clear and convincing evidence that Mobley was the Appellants' biological father; and (2) the Appellants were estopped from asserting that they were Mobley's children because the Appellants had previously claimed to be Nathaniel Rhodes's children. For the reasons set forth below, we affirm.

"We will not set aside a probate court's findings unless they are clearly erroneous, and when such findings are supported by any evidence, they will be upheld on appeal. The probate court's application of the law, however, is subject to de novo review."[1]

So viewed, the record shows the following. After Mobley's death, Malathia Mobley, who is one of Mobley's children, filed a petition to determine heirs. The probate court held a hearing — which was not transcribed — to decide whether the Appellants were Mobley's children.[2] At the hearing, Levolia Rhodes, the Appellants' mother, testified that at the time of the Appellants' births, she was married to Nathaniel Rhodes. However, she stated that she engaged in an extramarital affair with Mobley. According to Levolia Rhodes, she removed her IUD, had intercourse with Mobley, and then became pregnant with Alicia Rhodes. She then repeated this process with Ryan Rhodes. Levolia Rhodes testified that she did not give her husband

---

[1] (Citations and punctuation omitted.) *In re Estate of Jenkins*, 366 Ga. App. 628, 629 (883 SE2d 843) (2023); accord *In re Estate of Hawkins*, 328 Ga. App. 436 (762 SE2d 149) (2014).

[2] Our understanding of the testimony presented at the hearing is based on the trial court's order.

"access" to her during this time. Despite these assertions, Nathaniel Rhodes was listed as the father on the Appellants' birth certificates.

When Nathaniel Rhodes died intestate in 2006, Alicia Rhodes attested that she was Nathaniel Rhodes's child. Levolia Rhodes, on behalf of Ryan Rhodes (who was a minor at the time), also attested that Ryan Rhodes was Nathaniel Rhodes's child. While the Appellants waived their claims to Nathaniel Rhodes's personal property, they did inherit a portion of Nathaniel Rhodes's real estate.

As additional evidence that the Appellants were Mobley's children, they submitted documentation at the hearing showing that, at one point in 1996, Levolia Rhodes lived with Mobley. Mobley also listed the Appellants as beneficiaries on one of his bank accounts. In 1999, Mobley bought United States savings bonds for the Appellants. The Appellants submitted text messages between the Appellants and Malathia Mobley discussing Mobley's funeral and handling other issues stemming from Mobley's death. Mobley's funeral program listed the Appellants as Mobley's children. Finally, a close friend of Mobley testified at the hearing that Mobley had told him that the Appellants were his children.

After the hearing, the probate court found that there was both "significant evidence" that the Appellants were Mobley's children and "significant evidence" that

they were not. The court recounted the evidence above, but also found that the Appellants lived with Nathaniel Rhodes for several years, the Appellants were listed in Nathaniel Rhodes's obituary as his children, there was no written document — such as a birthday card or insurance policy — where Mobley identified the Appellants as his children, and there was testimony that Mobley gave gifts to many individuals. The court also noted that the Appellants did not petition for DNA testing. Based on this "contradictory evidence," the probate court found that the Appellants failed to show that they were Mobley's children by "clear and convincing proof." This appeal from the Appellants followed.

1. The Appellants argue that the probate court erred in finding that they did not carry their burden of showing that Mobley was their biological father. We disagree.

Under OCGA § 53-2-3 (2) (A), a child born out of wedlock may inherit from a father who died intestate only if:

> (i) A court of competent jurisdiction has entered an order declaring the child to be legitimate, under the authority of Code Section 19-7-22 or such other authority as may be provided by law;
> (ii) A court of competent jurisdiction has otherwise entered a court order establishing paternity;
> (iii) The father has executed a sworn statement signed by him attesting to the parent-child relationship;

4

(iv) The father has signed the birth certificate of the child; or

(v) There is other clear and convincing evidence that the child is the child of the father.

Notwithstanding the above, a DNA test showing paternity creates a rebuttable presumption of kinship.[3] A party whose kinship is in question may petition the court for DNA testing upon "good cause shown[.]"[4]

The Appellants in this case did not request DNA testing, but instead relied on OCGA § 53-2-3 (2) (A) (v): "clear and convincing evidence that the child is the child of the father." "'Clear and convincing evidence' is an intermediate standard of proof, greater than 'the preponderance of evidence,' but less than the 'beyond a reasonable doubt' standard applicable in criminal cases."[5]

In *Varner v. Sharp*, we affirmed the trial court's finding that the putative daughter had proved that she was the decedent's child by clear and convincing evidence.[6] In that case, the daughter presented evidence that she visited the decedent

---

[3] See OCGA § 53-2-3 (2) (B).

[4] See OCGA § 53-2-27.

[5] (Citations and punctuation omitted.) *Sharp v. Varner*, 226 Ga. App. 570, 572 (2) (486 SE2d 701) (1997).

[6] 219 Ga. App. 125, 127-128 (464 SE2d 388) (1995).

regularly as a child, the decedent paid child support to the daughter's mother, he paid for her to attend college, he attended her wedding, acknowledged the daughter's sons as his grandchildren, helped pay his grandchild's tuition, introduced her to his friends as his daughter, and told his girlfriend that he wanted her to meet his daughter.[7] Similarly, in *Youmans v. Ormandy*, we affirmed the jury's finding that the putative daughter had proved that she was the decedent's child by clear and convincing evidence.[8] There, the daughter presented evidence that she grew up with her brother believing they were siblings, the decedent supported the daughter financially and emotionally, he celebrated her birthday and Christmas with gifts, he carried photographs of his daughter and granddaughter, and the decedent told his mother that his daughter was his child.[9]

By contrast, in *In re Estate of Burton*, the Supreme Court of Georgia held that the probate court erred in finding that the appellee had proved paternity by clear and convincing evidence.[10] In that case, the decedent had no contact with the appellee for

[7] See id. at 127.

[8] *Youmans v. Ormandy*, 206 Ga. App. 255, 257 (1) (424 SE2d 828) (1992).

[9] See id. at 256-257 (1).

[10] 265 Ga. 122, 124 (453 SE2d 16) (1995).

the first 20 years of the appellee's life and the decedent never mentioned having a son to close family members.[11] While one of the decedent's employees testified that the decedent introduced the appellee as his son to her, another employee testified that the decedent would claim the appellee as his son on one occasion only to vehemently disavow paternity on the next occasion. Yet another employee testified that the decedent had stated that he was childless when interviewed by a local television station.[12]

In this case, it was within the probate court's discretion to decide that the evidence presented by the Appellants did not establish paternity. Ultimately, it was for the factfinder, not this Court, "to weigh the evidence" and "to assess witness credibility."[13] As noted by the probate court, the evidence was "contradictory," and the Appellants did not petition for DNA testing. Additionally, in the absence of a transcript, we "must assume that the evidence adduced below was sufficient to support the probate court's findings."[14]

---

[11] See id. at 123.

[12] See id. at 123-124.

[13] *Sharp*, 226 Ga. App. at 571 (2).

[14] *Price v. Price*, 281 Ga. 126, 127 (636 SE2d 546) (2006).

Accordingly, the probate court did not err in finding that the Appellants failed to prove paternity by clear and convincing evidence. We thus affirm.

2. The Appellants also argue that the trial court erred in finding that the Appellants were estopped from asserting that they were Mobley's children because the Appellants previously claimed to be Nathaniel Rhodes's children in inheriting his property. Having reached the merits in Division 1 above, we need not address this claim of error.

*Judgment affirmed. Barnes, P. J., and Land, J., concur*.