By the Court,

Bronson, J.
If the deed of 1764, from William Ricketts Van Cortlandt to his brother Philip Van Cortlandt, was duly proved and recorded, so as to make the record evidence under any of the statutes of this state, the defendant has made out a perfect title to the premises in question, and the judgment of the court below should be affirmed. The plaintiffs *193 object to the record on the following grounds: 1. The deed was not acknowledged by the grantor, but proved, by a subscribing witness, at a time when there was no statute to authorize the proof of deeds, for the purpose of having the same recorded; 2. That as the lands granted were situate in the county of New York, a judge of the court of common pleas of the county of Queens had no authority to take proof of the deed; and 3. That the deed was not recorded in the proper county.
The several acts relating to the proof and recording of deeds and conveyances of real estate, which were in force either in the colony or state of New York, at any time previous to the late revision of the laws, are collected in 3 R. S. App. 5, p. 47. The first act was passed 30th October, 1710, and there was no other statute concerning the proof or recording of deeds, until the act of 16th February ¡ 1771. By the 4th section of the act of 1710, it was enacted , “ that all and every deed, conveyance or conveyances, and writings, relating to the title or property of any lands, messuages, tenements or hereditaments, within this colony, which have been already, or shall be hereafter executed, being duly acknowledged and recorded in the secretary’s office of the said colony, or in the county records where such lands are situate and being; such deed or writing so recorded, or transcript thereof, shall be good and effectual evidence in any court of record within this colony, to all intents and purposes, as if the original deed or deeds, conveyance or conveyances, and writings, was or were produced and proved in court.” The section does not, in terms, extend to any other than such deeds as should be duly acknowledged, and on this ground, it is said, that the deed 764 was not duly recorded. It will be observed, however, that the language is not like that in the subsequent statutes on the same subject, which provide that any deed acknowledged by the grantor, or proved by a subscribing witness, may be recorded; and I am strongly inclined to the opinion, that the legislature, by the word “ acknowledged,” intended to include all the forms then in use, of verifying conveyances for the purpose of having them recorded. That the practice oí proving, as well as acknowledging* deeds for that purpose, then existed in the colony, abundantly appears by the re- [341] cords in the secretary’s office, and those in the office of the clerk of the county of Albany; and I presume will also appear on inspection of the records in the other counties which were organized previous to the revolution. This act was not passed for the purpose of conferring authority to acknowledge and record deeds, but to declare the effect of the record when given in evidence, in lieu of the original deed. It did not prescribe the mode in which the acknowledgment should be made, before what officer it should be taken, nor the manner in which the fact should be certified; but simply provides that the deed, “ being duly acknowledged and recorded,” the record or transcript shall be evidence. How these facts could be duly performed, the statute has not declared. The legislature left that question just where they found it; and we must resort to the usage which then prevailed, or, if I may so call it, the common law of the colony, to ascertain under what circumstance a deed might be recorded.
That there was a usage, or common law of the colony on this subject, and that it extended to the proof as well as the acknowledgment of deeds is clearly established by the act of February 16th, 1771. The preamble recites, that " it has been an ancient practice in this colony, to record deeds' concerning real estates, upon the previous acknowledgment of the grantors, or proof made by one of the subscribing witnesses of the execution of the instruments, before a member of his majesty council, a judge of the supreme or county court, or a master in chancery, and sometimes, before a justice of the peace.” The 4th section declares, that no deed thereafter executed shall be recorded, unless acknowledged or proved before certain officers, *194 who are hereby declared to have lawful authority to take the same, in the manner which hath anciently and constantly used.” It appears by the records already mentioned, that the practice of recording transports or conveyances of lands, existed while this was a Dutch colony. In many instances, the instrument was executed in the presence of a public officer, who sub-[342] scribed his name with that of the grantor, and the deed was then recorded without any further verification, so far as can be gathered from the records. Although this may not have been the origin of the usage which afterwards prevailed, yet the public records show that the practice of recording deeds and other instruments affecting the title to real property, has existed ever since the capitulation to the English, in 1664. In some cases, there was no verification of the conveyance, or, at least, none is stated in the record; sometimes the deed was proved, and somelimes acknowledged; and the practice was, in this respect, the same after as it was before the passing of the act of 1710, although that spoke only of deeds acknowledged. Both before and after that statute, the proof of acknowledgment was made before mayors of cities and justices of the peace as well as other public officers.
This usage of proving and recording deeds has been judicially sanctioned, and must, undoubtedly, be regarded as a part of the common law of this state. In Jackson v. Schoonmaker (2 Johns. R. 230), the deed was acknowledged by one of the grantors in 1750, who at the same time, proved the execution by the other grantors, and this was held sufficient to warrant the recording of the deed. Kent, C. J., who delivered the opinion of the court, said, “ the practice in the colony before that time, is undoubtedly to be regarded on a question touching the authenticity and validity of an ancient deed, and the deed before us is to be classed under that denomination.” In this case, the rpcord, and not the deed itself, was given in evidence, and was regarded as equally conclusive with a record made in conformity to the recording acts of a more recent period. In Jackson v. Gilchrist (15 Johns. R. 89), the deed of a feme covert, acknowledged before a justice of the peace in 1711, was held valid, although the certificate did not state that she was privately examined. The decision was placed on the confirmatory act of 1771; but O. J. Thompson remarked, that in point of fact, and as a matter of practice, the common law rule in relation to conveyances by femes covert [343] had never been adopted in this state. Considering it settled upon authority, that the record of deeds proved, as well as those acknowledged, may be received in evidence, I should have said less upon this point if it had not an important bearing upon the remaining questions in the cause.
The next objection to the record, is, that although the land was situate in New York, the deed was proved before a judge of the coriimon pleas of the county of Queens. I am not aware that it has ever before been supposed that the officer before whom the proof or acknowledgment is made, must reside in the county where the land lies, except in those cases where the legislature has so expressly provided. In Jackson v. Gilchrist, the land lay in the county of Saratoga, and. the acknowledgment was before a justice of the peace of Essex county, New Jersey. In Jackson v. Colden (4 Cowen, 280), the late chief justice remarked, that the jurisdiction of a judge of the common pleas in taking the proof and acknowledgment of deeds, extended throughout the state. Such, undoubtedly, was the former practice; and there was no statute declaring before what officers a deed should bo proved, until the act of 1771, Then, for the first time, the mode of taking the proof or acknowledgment, the form of the certificate, and the officers before whom the business should be transacted, were regulated by law; and county judges, unless for the county where the land lay, were ousted of jurisdiction. The act of December 12th, 1753, was confined to mortgages. The power of county judges was also restricted to the case of deeds for lands in their own *195 county, by the acts of 1788, 1798 and 1801, except that the first judge had general jurisdiction, in most cases, under the two last mentioned statutes. By the first section of the act of April 7, 1806, the other county judges were placed on the same footing with the first judge, and have, I believe, continued so ever since. They can not now take the proof or acknowledgment of deeds when out of the county for which they were respectively appointed; but it is unimportant where the land lies (1 R. S. 756, § 4). From this brief review, it will be seen, that the practice concerning [344] acknowledgments before county judges, which existed without any statute regulation previous to 1771, accords substantially with that which has been prescribed by the legislature ever since 1806. There can, I think, be no doubt that the deed was well proved before a judge of Queens county.
The next inquiry relates to the place where the deed was recorded. To what extent deeds may formerly have been recorded in other counties than those in which the lands lay, I am unable to determine. It seems improbable, however, that there was any general practice of recording elsewhere than in the secretary’s office, or in the county where the lands were situate. The act of 1710, although not made for the purpose of prescribing the place of recording, only provides for deeds recorded “ in the secretary’s office of the said colony, or in the county records where such lands are situate and being.” The act of 1771, says nothing about the place of recording, except that they shall not be recorded “ in any of the public offices,” unless proved or acknowledged in a particular manner. § 4. By subsequent statutes, deeds were allowed to be recorded in either of the offices already mentioned; and this practice continued until it became necessary to record conveyances to prevent their being deemed fraudulent against subsequent purchasers, when the place of recording was restricted to the county. There is, then, nothing in the colonial laws, nor, so far as I can discover, in any general usage prevailing at that period, which would authorize the recording of this deed in the county of Queens. That deeds were sometimes recorded in other counties than those in which the lands were situate, is proved by the case before us, and it is said, that the same course was pursued in other instances; but the general practice must, I think, have been otherwise.
The early usage, and subsequent legislation on this subject in the colony, was probably suggested by the statute, 27 Hen. 8, ch. 16, which required all deeds of bargain and sale to be enrolled in one of the king’s courts of record at Westminster, or in the county where the lands lie (2 Inst. 670; Cruise Dig. Deed, ch. 9, § 81, 33). The object of this statute, and [345] the colonial acts, were, however, different. Recording in the one case, was essential to the validity of the title; and in the other, it was only designed to preserve the evidence of the grant. The statute of 27 Hen. 8, was passed at the same session with the statute of uses; and the enrollment was intended to be a substitute for that public notoriety which attended the former mode of alienation by feoffment with livery of seizin. It was therefore enacted, that the land should not pass by any bargain and sale, unless the deed should be enrolled within six months after its date. But the practice of recording deeds in the colony had nothing to do with the validity of the title. The purpose for which the record was made is clearly defined by the recital to the fourth section of the act of 1710: Whereas, by many accidents, the deeds and writings relating to estates, some time have been, and may hereafter be destroyed, consumed and lost, whereby the lawful and rightful owner of any lands, &c. may be exposed to many doubtful, expensive and vexatious suits, and other inconveniences.'’ It was not until the act of April 3, 1798, that deeds were in any case required to be recorded, under the penalty of being adjudged fraudulent and void against any subsequent bona fide purchaser or mortgagee. This act was confined to the western *196 counties, but has since been extended from time to time, until the same rule now prevails over the whole state. If the practice of recording in the colony was suggested by the English statute, the grantees in deeds would probably follow the outline of the statute, by recording either in some office common to the whole colony, or in the county where the lands were situate. But still, as the matter was not regulated by law, it is not surprising that deeds were sometimes recorded in other counties. If we could trace back to its origin, any custom which has ultimately acquired the force of law, we should not expect to find a settled and uniform practice near the period of its commencement. I do not, therefore, regard the fact that this deed was recorded in Queens, as furnishing any just ground of suspicion against the validity of the instrument. Still, I do not perceive that the transcript was en-[346] titled to the force of record evidence, unless the case has been provided for by some statute since the revolution.
The first section of the act of January 29, 1811, is in the following words: “ The record of any conveyance relating to any lands or tenements within this state, executed previous to the fourth day of July, in the year 1776, and acknowledged or proven according to law, and recorded in the office of the clerk of any of the counties within the late colony of ISew York, or a sworn copy of such record, shall be evidence in any court of law or equity in the same manner as the original conveyance would be if produced and proven.” In the revision of 1813, this formed the sixth section of the general recording act, except that the words, “ a copy of such record certified by any such clerk,” were substituted for the words, “ a sworn copy of such record.” This case clearly falls within the language of the statute. The lands are within this state, the deed was executed previous to 1776, it was proved according to law, and recorded in the office of the clerk of one of the counties within the late colony of New York. The statute declares, that “ the record ” of such a conveyance, or “ a copy of such record certified by any such clerk,” shall be evidence in the same manner as the original conveyance would be if produced and proven. There is, then, an end of the question,' unless we can discover that the law makers plainly intended something different from what the language of the statute obviously imports.
It is insisted, on the part of the plaintiffs, that by “ any of the counties, &c., the legislature intended the proper county—the one where the lands lay; and that the only object of the statute was to prescribe the mode of proving the record when it had been made in the proper county. Although I was inclined to that opinion on the argument, subsequent reflection has satisfied me that this construction can not be maintained. It would render the statute nearly, if not quite nugatory. If the deed had been recorded in the secretary’s office, or in the county where the land lay, the case had already been provided for by law. The act of 1710 declared that “ such deed or [347] writing so recorded, or transcript thereof, shall be good and effectual evidence in any court of record within this colony to all intents and purposes, as if the original deed or deeds, conveyance or conveyances, and writings, was or were produced and proved in court.’’ Should it be admitted that 11 transcript,” as it is here used, does not mean a copy of the record, but the record itself, still a sworn copy of the record would, I think, upon general principles, be admissible evidence; and then, on the construction of the plaintiffs’ counsel, the act of 1811 vras utterly worthless. It merely declared that “ the record,” or “ a sworn copy’ of it should be evidence, which was nothing more than re-enacting a law which had been in force more than a century. But, at all events, the record itself was good evidence, and I can not believe that the act of 1811 was passed for the single purpose of obviating the necessity of producing the original book of records in court. If it was the intention of the legislature to remove any doubt concerning the ad *197 missibility of a-sworn copy in evidence, I think they also intended to go beyond that question, and provide for records which had not been made in the proper county. The language of the act not only plainly includes this case, but the intention of the law makers to include it may be fairly inferred by comparing this with the other recording statutes. In all the acts, from 1710 down to the year 1811, the legislature had spoken a uniform language in relation to the place of recording deeds. The record was to be made either in the secretary’s office, or in the county where the land lay. Then came the act of 1811, and declared the record or a sworn copy good evidence, whenever the deed had been recorded in any of the counties within the late colony of New York. I am unable to account for this marked change in the language of the legislature, without supposing that they intended to provide for deeds which had not, as well as those which had been recorded in the proper county. It is also worthy of remark, that the act only applies to deeds “ acknowledged or proven according to law,” while there is no such qualification in relation to the recording of the deed. If we adopt the plaintiffs’ construction, and say that the act only extends to deeds legally [348] recorded, we must then change the phraseology, and make the words “ according to law.” apply to the recording, as well as to the proof or acknowledgment of the deed.
There is a further reason against the construction contended for by the plaintiffs. If the only object of the act of 1811 was to prescribe the mode of proving the record, why was it confined to county records? Why not also include the records in the secretary’s office? The inconvenience of removing the original record, and producing it in court, would at best be as great in the latter case as in the former. Before the revolution, deeds were either recorded in the secretary’s office or with the clerk of some county. In the first case the record was valid wherever the land might be situate; but it was not so in the last; and deeds had not always been recorded in the proper county. Then came the act of 1811, and without making any provision for the records in the secretary’s office, declared the record good evidence when made in any of the counties of the late colony. This goes very far, I think, to prove that the leading, if not the sole intention of the legislature, was to provide for deeds which had been recorded in someone of the colonial counties, but not the proper one. The act of 1811 was considered of more importance at the time it was passed, than would probably have been attached to it, had it merely provided an additional mode of proving what was already a valid record. On referring to the journals and other public records, it appeal s that the act passed both houses of the legislature, near the close of the session, in the year 1810. On the 5th day of April it was taken up by the counsel of revision, and its further consideration postponed. On the 5th of April, which was the last day of the session, after further consideration, it was committed to the chancellor to be reported on at the next session of the legislature. On the first day of the next session, being the 29th January, 1811, the chancellor reported the bill without objection to the council of revision, and they thereupon sent a message to the legislature giving their assent to the bill, when it became a law in pursuance to the provisions of the constitution. I can hardly suppose that the council would have [349] retained the bill from one session to another, if it had contained no principle more important than that of allowing a sworn copy of a legal record to be received in evidence. Piad the council of revision understood as the plaintiffs’ counsel do, that this was the only purpose for which the bill was designed to answer, they would have needed little time for deliberation. They would have said at once that the bill was either useless, on the ground that a sworn copy was already admissible, or that there could be no objection to its becoming a law.
*198 It was not suggested on the argument, nor do I perceive that there can be any objection to the validity of the act on the construction which I have given to it. Although it sanctioned certain ancient records which had not been made in the proper counties, it only extended to deeds, the execution of which had been acknowledged or proved according to law; and in all eases where a deed is read in evidence on proof or acknowledgment out of court, the party affected by it may contest the validity of the deed (4 Johns. R. 161; 12 id. 469). The act only extended to deeds which had been executed more than 34 years before it was passed, and would not be likely to work any injustice. If the deed had been forged, or there was any other objection to its validity, there would probably have been a sufficient adverse possession to destroy the effect of the conveyance on that ground. There "was little probability that the act would have any other effect than that of quieting men in the enjoyment of their just and lawful rights. In the case under consideration, the deed was executed more than 70 years ago. It was proved in 1768, and recorded in 1771.. During the continuance of the life estate of Mrs. Hughes, the possession of Philip Van Cortlandt, the grantee, may be accounted for without supposing the existence of the deed; but since her death in 1789, a period of near half a century, the land has been constantly held by the grantee in the deed, or those claiming under him, to the exclusion of the grantor, who independent of the deed, was tenant in common with the grantee. It is true, that William Ricketts Van Cort[350] landt, the grantor, became a lunatic before his right of entry accrued; but his children and the trustees for his creditors were all interested in asserting his title; and yet no claim was ever set up, so far as appears, until the commencement of the present suit. We had in the meantime passed through a civil war, in which the grantee had taken the wrong side in politics. At the close of the revolution he was driven out of the country and has since died. The person in possession, though holding under him, is not his heir at law, nor did he come to the possession in a way that would in the ordinary course of business give him the custody of the original title deeds, supposing them still in existence. It is, however, highly probable that they were lost or destroyed during the revolution, or that Philip Van Cortlandt carried them with him when he left the country. In cases of this character, the act of 1811 exerts a salutary influence, by way of quieting men in their possessions; and there are, I think, very few, if any cases, where it can be productive of any evil consequence. Acts involving a similar principle have often been passed on a variety of subjects; but without looking beyond the laws in relation to the proof and recording of deeds we shall find a number of statutes which provide for mistakes, omissions and other defects in titles, no less important than that of recording a deed in the wrong county. See Act of 1771, § 1, above referred to; Act of March 1, 1787; Act of March 9, 1793; Act of February 23, 1798; Act of April 7, 1806, §2; Act of March 8, 1817, § 1, 2, 4, 5. These acts are all collected, 3 R. S. App. 5, p. 47.
As no attempt was made to impeach the deed, the jury were properly instructed that the defendant was entitled to a verdict. It is of course unnecessary to notice the other ground on which the defendant’s counsel attempted to support the deed.
Judgment affirmed.