### White & Company v. Magarahan et al.

1. A voluntary deed from a husband to his wife, dated November 19th, 1887, and witnessed by two unofficial persons, was handed by the maker to the clerk for record February 9, 1888. The latter refused to record it for want of legal attestation. Whereupon the maker acknowledged it was his deed, and the clerk signed his name officially under the usual attestation clause, "signed, sealed and delivered in presence of us," and recorded it: *Held,* that this record was not notice of the execution of the deed at the time it bears date to a creditor of the maker who extended credit on the faith of the property covered by the deed after its execution and before record.

2. When a course of dealings begins between parties, and credit is extended by one to the other on the faith of particular property, the legal presumption is that this property is relied on for all credit given while the dealings continue, until there is some notice or agreement to the contrary, such dealings covering a period of only a few months.

3. The verdict being inevitably right in any view of the case as presented, it was error to grant a new trial.

May 8, 1891.

Debtor and creditor. Husband and wife. Notice. Deeds. New trial. Before Judge Roney. Richmond superior court. April term, 1890.

Reported in the decision.

J. R. Lamar, for plaintiffs.

Salem Dutcher, for defendants.

Lumpkin, Justice.

The firm of Durst, Shea & Co., of which Magarahan was a member, obtained credit from White & Co. upon the faith of a statement made for the purpose of obtaining the credit to the Bradstreet Mercantile Agency, dated October 4th, 1887, and signed by the firm and Magarahan individually, in which it was represented that the latter owned real estate to the value of $16,000.00. White & Co. sold various bills of goods to Durst, Shea & Co., the last credit being given in Janu-

ary, 1888. November 19th, 1887, Magarahan, by a voluntary deed, conveyed to his wife for life the land referred to in said statement, with remainder to his children by her in life at the time of her death, and if none, the property to revert to himself. The deed was witnessed by two unofficial persons. February 9th, 1888, Magarahan carried it to the clerk of the superior court and requested him to record it. The latter refused to do so, remarking, in substance, that it must have an officer as a witness, whereupon Magarahan acknowledged that it was his deed, and the clerk signed his name officially as a witness under the usual attestation clause, and then took the deed and recorded it. According to the testimony of Magarahan, all the indebtedness of his firm to White & Co. up to the date of the deed was actually paid. Assuming this to be true, the debt for the payment of which White & Co. now seek to subject the land was for goods sold and delivered after the execution of the deed and before its record. White & Co. had no notice of the existence of this deed until after it was recorded. By making the deed Magarahan left himself practically insolvent.

1. The counsel for Mrs. Magarahan, who claimed the property levied on for the benefit of herself and children, insisted that the deed of Magarahan was legally recorded, and was, therefore, constructive notice to White & Co. of its existence from the time it bore date, because it was actually recorded in accordance with the provisions of section 1778 of the code within three months after the execution thereof. In our opinion, the deed was not legally recorded. Section 2706 of the code provides that, in order to authorize the record of a deed executed in this State, it must be attested by one of certain mentioned officers, including the clerk of the superior court; or, subsequent to its execution, acknowledged in the presence of one of these officers.

The section further provides that the fact of such acknowledgment must be certified on the deed by the officer in order to entitle it to be recorded. The provisions of this section were not observed as to the deed before us. It was not signed, sealed and delivered in the presence of the clerk, and therefore what appears to be an attestation or witnessing of the deed by him does not set forth the truth. What transpired between the maker of the deed and the clerk may have amounted to an acknowledgment of the deed by the former, but the fact of such acknowledgment is not certified on the deed by the officer as the law requires. A statement in the attestation clause of the deed that it was executed in the presence of the clerk is not a statement that it was acknowledged before him. Attestation and acknowledgment are different acts. Attestation is the act of witnessing the actual execution of a paper and subscribing one's name as a witness to that fact. Acknowledgment is the act of a grantor in going before some competent officer and declaring the paper to be his deed; and to make such acknowledgment good in law, it must be accompanied by the certificate of the officer that it has been made. In Webb on Record of Title, §69, the author says the certificate should state the fact of the acknowledgment and by whom made, using substantially, at least, the statutory language in stating these matters; and, also, the certificate must show a compliance with the law by a specific statement of the facts constituting a valid acknowledgment. See also Am. and Eng. Enc. of L. vol. 1, title Acknowledgment, and Bouvier's Law Dict. same title. It is immaterial whether the record of the deed conveyed notice to White & Co. from February 9, 1888, or not, because the transactions between them and Durst, Shea & Co., so far as extending credit to the latter is concerned, had all ended before the actual record of the deed. The law

at that time being that, if this deed was legally recorded within three months from its execution, the record should be constructive notice to all parties, taking effect from the date of the deed itself, it appears that claimant's rights, as asserted by her, are based upon a mere technical rule of the law. To enforce alleged rights resting on this foundation against one who extended credit upon the faith of this very property, it is incumbent upon the claimant to show that she has strictly complied with the law itself. This, we have seen, she failed to do, because it is clear that this deed was neither attested nor acknowledged in such manner as to entitle it to be placed on record. It, therefore, certainly was no notice to White & Co. prior to the time of its actual record, and they in justice and by strict law should be protected, and payment to them secured for all goods sold and delivered on the faith of this property after the execution of the deed and before its record.

2. It is quite apparent from the testimony in this case that White & Co. extended credit to Magarahan's firm on the faith of the property set forth in the statement made to the Bradstreet agency, and mainly upon the real estate referred to therein. The statement was made for this very purpose. Having no knowledge that the deed had been executed, they continued to extend credit undoubtedly on the faith of the same property, only a few months elapsing between the beginning and end of the dealings between these firms. This is a common sense view of the matter, is the legal presumption in such cases, and is the only reasonable conclusion to be gathered from the testimony in the case. If Magarahan wished White & Co. to understand that this property should no longer be the basis of credit in their dealings with his firm, he ought to have given them distinct notice of the fact, or at least to have so

executed his deed that the record thereof would be notice to them according to law. Having failed to do either, the presumption remains that White & Co. continued to sell on the faith of this property, and there is no reason appearing in the record to conclude otherwise.

3. Under the facts of this case, and in view of the illegal record of the deed, but one legal conclusion could result, viz. a verdict finding the property subject, section 1778 of the code providing that such a deed shall not be of any force against a creditor who in good faith and without notice may become such before the actual recording of the same. Various charges and rulings of the court are complained of in the motion for a new trial, but we have not scrutinized them closely to ascertain whether they were erroneous or not. It is unnecessary to do so, because the verdict being inevitably right for the reasons already stated in this opinion, it was error to set it aside and grant a new trial.

*Judgment reversed.*