**IN RE: Tammy Patricia SIMPSON, Debtor.**

**Robert Trauner, Chapter 7 Trustee for the Estate of Tammy Patricia Simpson, Plaintiff,**

v.

**First Tennessee Bank National Association, Successor Thru Merger with First Horizon Home Loan Corporation, Defendant.**

**CASE NO. 15–56155–WLH ADVERSARY PROCEEDING NO: 15–05311**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Signed February 3, 2016

Robert A. Bartlett, William Russell Patterson, Ragsdale, Beals, Seigler, et al, 2400 Intern. Tower Peachtree Center, 229 Peachtree Street, NE, Atlanta, GA 30303-1629, for Plaintiff.

Kevin A. Stine, Brett A. Switzer, Baker Donelson Bearman Caldwell, et al, Suite 1600—Monarch Plaza, 3414 Peachtree Road, NE, Atlanta, GA 30306, for Defendant.

### *ORDER*

Wendy L. Hagenau, U.S. Bankruptcy Court Judge

This Adversary Proceeding is before the Court on Defendant's Motion to Dismiss (Docket No. 4) and Plaintiff's Opposition to Defendant's Motion to Dismiss (Docket No. 6), which are being treated as cross-motions for summary judgment by agreement of the parties. The parties dispute whether a security deed contains the requisite signatures and formalities to comply with Georgia law. The Court holds it does not, the defect in the deed is patent and, under Georgia law, the deed does not provide constructive notice to a bona fide purchaser. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K), and (O).

### *FACTS*

The facts in this case are undisputed. On October 24, 2004, Debtor executed a

second priority security deed for real property located at 2520 Brookwood Drive, NE, Atlanta, Georgia 30305 ("Security Deed") in favor of First Horizon Home Loan Corporation ("First Horizon") securing the repayment of a home equity line of credit. At some point after the execution of the Security Deed, First Horizon merged with First Tennessee Bank, N.A. ("First Tennessee"), and became known as "First Horizon Home Loans, a division of First Tennessee Bank National Association". First Tennessee is the current holder of the Security Deed.

The Security Deed was recorded with the Fulton County Superior Court on November 8, 2004 on pages 248 through 259 of Deed Book # 38801 ("Deed Book"). The signature page of the Security Deed is located on page 256 of the Deed Book

("Signature Page"). The pages immediately following the signature page include a page titled "GA Borrower Acknowledgment and Waiver" on page 257 ("Waiver Page") and a page titled "Rider to the Deed of Trust/Mortgage/Security Deed" on page 258 ("Rider"). Page 259, which is the last page in the collection of documents associated with the Security Deed, consists of a description of the property subject to the Security Deed.

The Signature Page is the source of the dispute between the parties. The page consists of two distinct sections. The top half of the page contains a section for the Debtor's signature and the attestation of Debtor's signature by witnesses, and the bottom half of the page is comprised of an acknowledgment clause. The Signature Page appears as follows:

The top of the page begins with the words, "*IN WITNESS WHEREOF, Borrower has signed, sealed and delivered this Security Deed. Signed, sealed and delivered in the presence of*:". Below these words is a line marked "*Witness*" which is signed with an illegible signature. Below that is a second line marked "*Witness*" which is blank. Across from the top witness line is a line marked "*TAMMY P*

SIMPSON, Borrower" which is signed by the Debtor. The bottom half of the page contains language of acknowledgment, which reads "Before me on this ___day of ___, ___, personally appeared TAMMY P SIMPSON who acknowledged that he/she/they signed this Georgia Deed to Secure Debt as his/her/their own act." The official witness signature follows this language and includes the printed name, signature, and seal of notary Charles Weldon, but does not include the date.

The Debtor filed her bankruptcy petition under Chapter 7 of the Bankruptcy Code on April 3, 2015, and Robert Trauner was appointed the Chapter 7 Trustee ("Trustee"). On August 7, 2015, the Trustee filed this Adversary Proceeding against First Tennessee. (Docket No. 1). In the complaint, the Trustee seeks to avoid the security interest held by First Tennessee on Debtor's interest in the property under the Security Deed pursuant to 11 U.S.C. § 544 and preserve the Security Deed for the benefit of Debtor's bankruptcy estate under 11 U.S.C. §§ 550 and 551. First Tennessee moved to dismiss the complaint on September 8, 2015. (Docket No. 4). The Trustee timely responded and asked that First Tennessee's motion to dismiss be treated as a motion for summary judgment. (Docket No. 6). The parties agreed that the sole issue to be determined was the validity of the Security Deed and that their pleadings should be treated as cross-motions for summary judgment.

### LEGAL CONCLUSION

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "The substantive law [applicable to the case] will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 251–52, 106 S.Ct. at 2510–2512. The party moving for summary judgment has "the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *United States v. Four Parcels of Real Prop.,* 941 F.2d 1428, 1437 (11th Cir.1991) *(citing Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553).

Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings. Fed.R.Civ.P. 56(e). Rather, the nonmoving party must present specific facts that demonstrate there is a genuine dispute over material facts. *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 918 (11th Cir.1993). Lastly, when reviewing a motion for summary judgment, a court must examine the evidence in the light most favorable to the nonmoving party and all reasonable doubts and inferences should be resolved in favor of the nonmoving party. *Hairston,* 9 F.3d at 918.

Under 11 U.S.C. § 544(a)(3), a bankruptcy trustee may avoid "any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by a bona fide purchaser of real property ... that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the com-

mencement of the case, whether or not such a purchaser exists." A bona fide purchaser is not bound by any deed of which he does not have constructive notice. Under Georgia law, a security deed with a patent defect, even if recorded, does not provide constructive notice to a bona fide purchaser. *U.S. Bank, N.A. v. Gordon*, 289 Ga. 12, 709 S.E.2d 258 (2011). A patent defect is one that is "obvious and easily detectable", while a latent defect "is not apparent on the face of the deed". *Gordon v. Wells Fargo Bank, N.A. (In re Codrington)*, 430 B.R. 287, 292 (Bankr. N.D.Ga.2009), *aff'd*, 716 F.3d 1344 (11th Cir.2013). In other words, "[i]f the document appears proper on its face, and only matters outside the document create the issue, the deficiency is latent, but if the issue is identifiable on the face of the document, it is patent." *Gordon v. Wells Fargo Bank, N.A. (In re Knight)*, 504 B.R. 668, 672 (2014).

■ A security deed must be attested or acknowledged as provided by law in the manner set forth for mortgages under Georgia law. *See* O.C.G.A. §§ 44–2–14, 44–14–61. In order for a security deed to be "duly recorded", it must be attested or acknowledged by an "official witness" such as a judge of a court of record, a notary public, or a clerk or deputy clerk of a superior court or a city court, and it must also be attested or acknowledged by an additional "unofficial" witness. *See* O.C.G.A. §§ 44–2–1, 44–14–33.

The parties agree that the sole question to be decided is whether the Security Deed is patently defective. The Trustee asserts the Security Deed is patently defective because it lacks the attestation or acknowledgment of an official witness. The Trustee claims the official witness signature on the Security Deed is not a proper attestation or acknowledgment. First Tennessee argues the notary's signature should be construed as an attestation, and that the location of the signature on the page does not matter for that purpose. There is no dispute regarding the validity of the unofficial witness signature.

**Sufficiency of signatures under 2004 Georgia law**

■ At the time the Security Deed was executed, Georgia law required signatures of both an official witness and an unofficial witness, and allowed for acknowledgment as well as attestation as alternate means of authentication. *See* O.C.G.A. § 44–14–33 (2004 Ga.Code Archive).[1] Attestation and acknowledgment are distinct acts. Attestation is the act of witnessing the actual execution of a paper and subscribing one's name as a witness to that fact. *See Gilliam v. Burgess*, 169 Ga. 705,707, 151 S.E. 652, 653 (1930) (*citing White v. Magarahan*, 87 Ga. 217, 219, 13 S.E. 509 (1891)).[2] Acknowledgment is the act of a grantor going before a competent officer and declaring the paper to be his deed. *Magarahan*, 87 Ga. at 219, 13 S.E. 509. In the context of notarial acts, the Georgia code states that " '[a]ttesting' and 'attestation'

---

1. O.C.G.A. § 44–14–33 was amended, effective July 1, 2015, to read: "In order to admit a mortgage to record, it shall be signed by the maker, attested by an officer as provided in Code Section 44–2–15, and attested by one other witness." Legislative history indicates that while "the [former] language allow[ed] for acknowledgment as well as attestation", the change removing the acknowledgment language from the statute is meant to "clarify that only attestation will suffice in recording and executing [deeds]." Ga. H.R. Daily Rep., 2015 Reg. Sess. No. 40 (Apr. 7, 2015).

2. *Magarahan* was overruled by *Leeds Bldg. Prods. Inc. v. Sears Mortg. Corp.*, 267 Ga. 300, 477 S.E.2d 565 (1996), to the extent that a latently defective attestation would destroy the constructive notice of an otherwise improperly recorded deed.

are synonymous and mean the notarial act of witnessing or attesting a signature or execution of a deed or other written instrument, where such notarial act does not involve the taking of an acknowledgment...." O.C.G.A. § 45–17–1(1).

■ Georgia law does not require specific words or phrases for attestations or acknowledgments. However, certain commonly used recitals can be used to both identify and differentiate between attestations and acknowledgments. The form of attestation in common use recites that the witness saw the maker sign, or that he signed in the witness' presence. *See* DANIEL F. HINKEL, PINDAR'S GA. REAL ESTATE LAW & PROC. § 19:63 (7th ed.). Though there are no specific words that are required for a valid attestation, the use of words or phrases such as "witness" or "signed in the presence of" have been deemed sufficient to indicate that a witness attested to the execution of a document. *See, e.g., Hansen v. Owens,* 132 Ga. 648, 64 S.E. 800 (1909) (stating that the phrase, "in presence of," above the witness' signature is a sufficient attestation); *see also Hooten v. Goldome Credit Corp.,* 224 Ga. App. 581, 481 S.E.2d 550 (1997) (finding that the phrase "signed, sealed and delivered in the presence of" indicated a valid attestation even where notary crossed out the word "witness" and replaced it with "notary public" and failed to affix a seal).

■ An acknowledgment is generally identified by language found in the form of a "jurat" or certificate of acknowledgment, which is an explicit certification by a notary public that a person signing a document appeared before the notary and swore or affirmed that the assertions in the document were true. *See* 91 AM.JUR. PROOF OF FACTS 3d 345 § 8 (2006). Like attestation clauses, there are no specific words or precise form required for a certificate of acknowledgment; it only needs

to state the fact of the acknowledgment and identify the person making the acknowledgment. *Id.*; *see also Magarahan,* 87 Ga. at 219, 13 S.E. 509.

■ The portion of the Signature Page signed by notary Charles Weldon begins with the language: *"Before me on this day ... personally appeared TAMMY P. SIMPSON who acknowledged that he she they signed this Georgia Deed to Secure Debt as his/her/their own act."* This language indicates a certificate of acknowledgment. The attestation language begins at the top of the page, but is interrupted by the certificate of acknowledgment midway down the page. Mr. Weldon signs on the space designated for a notary's signature in the jurat. Based on the placement of the notary's signature within the certificate of acknowledgment on the Signature Page the Court concludes the signature of the official witness, notary Charles Weldon, is an attempted acknowledgment and not an attestation.

Both parties addressed the applicability of *Bloodworth v. McCook,* 193 Ga. 53, 17 S.E.2d 73 (1941). In *Bloodworth,* the Georgia Supreme Court considered whether an individual who signed his name above the attestation clause of a will could nonetheless be a witness to the document's execution. The court held because an attestation clause was not required, an individual who signed above the word "witness" could still be a valid attesting witness. Cases citing *Bloodworth* do so for the proposition that probate in solemn form requires the production of all witnesses to the will. *See, e.g., Thornton v. Hulme,* 218 Ga. 480, 128 S.E.2d 744 (1962); *Lane v. Lane,* 221 Ga. 818, 147 S.E.2d 430 (1966). However, at least one influential treatise interprets the case to hold that common recitals are unnecessary for finding a valid attestation. *See* DANIEL F. HINKEL, PINDAR'S GA. REAL ESTATE LAW &

PROC. § 19:63 (7th ed.). Even if an attesting witness' signature can be located anywhere on the signature page, the Court remains persuaded that the placement of Mr. Weldon's signature within the certificate of acknowledgment carries greater weight and indicates that the signature is an acknowledgment.

**Validity of notary Charles Weldon's acknowledgment**

■■ A notary public is authorized under Georgia law to attest to the signature or execution of deeds and to take acknowledgments. *See* O.C.G.A. §§ 45–17–8(a), 45–17–1(2). When documenting a notarial act, such as an attestation or an acknowledgment, a notary "shall sign on the notarial certification ... exactly the name indicated on the notary's commission and shall record on the notarial certification the exact date of the notarial act." O.C.G.A. § 45–17–8.1(a). If however the notarial act is an attestation of deeds or other instruments pertaining to real property, the requirement that the notary record the exact date shall not apply. O.C.G.A. § 45–17–8.1(b). The Signature Page shows that notary Charles Weldon signed his name and affixed his seal on the signature line provided in the certificate of acknowledgment, but failed to fill in the date. Because his signature has been construed as an acknowledgment, rather than an attestation, the exception to the date requirement in O.C.G.A. § 45–17–8.1(b) does not apply. Therefore, the Court must determine whether the failure to include the date of acknowledgment invalidates the acknowledgment, rendering the Security Deed patently defective.

Case law addressing the validity of an acknowledgment that is missing a date is limited. When the issue does arise, courts tend to strictly hold notaries public to whatever duties are required by statute, including the requirement that a notary record the date when performing notarial acts other than attestations. *See, e.g., Hurt v. Norwest,* 260 Ga.App. 651, 580 S.E.2d 580 (2003) (acknowledgment of affidavit of indigence invalid where the signature of the notary not dated); *Anderson v. All American Quality Foods,* 333 Ga.App. 533, 773 S.E.2d 389 (2015) (same). Other circuits that have addressed the issue in the context of deeds have reached the same conclusion. *See, e.g., Davis v. World Savings Bank (In re Androes),* 382 B.R. 805 (Bankr.D.Kan.2008) (mortgage avoidable by trustee due to notary's failure to include date of notarial act in acknowledgment where required by statute); *First Sec. Bank of Utah, N.A. v. Styler,* 147 B.R. 248 (D.Utah 1992) (acknowledgment of deed defective where it does not indicate the date, along with other missing information).

This Court concludes that the failure of Mr. Weldon to insert the date of his notarial act of acknowledgment invalidates the acknowledgment. While this may seem technical, the date of the notarial act is particularly important in the context of the acknowledgment since the acknowledgment need not occur on the same date as the execution of the deed. The date of acknowledgment can be important for numerous reasons affecting the validity and authenticity of the deed. The failure to record the date in an acknowledgment must be treated similarly to the way other deed defects are treated under Georgia law: a deed that shows on its face it was "not properly attested or acknowledged, as required by statute, is ineligible for recording." *U S. Bank, N.A. v. Gordon,* 289 Ga. 12, 15, 709 S.E.2d 258 (2011) (*quoting Higdon v. Gates,* 238 Ga. 105, 107, 231 S.E.2d 345 (1976)). The Court is persuaded based on the plain language of O.C.G.A. § 45–17–8.1(a) & (b) and case law interpreting the validity of acknowledgments in

various contexts that in order to be valid, the notary's acknowledgment must include the date of the notarial act.

### Applicability of O.C.G.A. § 44–2–18

■ Lastly, both parties address the signatures located on the Waiver Page. Georgia law provides that certain defects in the execution of a security deed can be cured with the submission of an affidavit from a subscribing witness. *See Gordon v. Terrace Mortg. Co. (In re Kim),* 571 F.3d 1342 (11th Cir.2009). O.C.G.A. § 44–2–18 is a remedial provision that states:

> If a deed is neither attested by nor acknowledged before one of the officers named in Code Section 44–2–15, it may be recorded upon the affidavit of a subscribing witness, which affidavit shall be made before any one of the officers named in Code Section 44–2–15 and shall testify to the execution of the deed and its attestation according to law. A substantial compliance with the requirements of this Code section shall be held sufficient in the absence of all suspicion of fraud.

■ The purpose of this provision is to provide an opportunity to cure a defect with the official signature of an otherwise recordable deed. *Terrace,* 571 F.3d at 1346. The remedial provision requires an affidavit that testifies to the "execution of the deed and its attestation according to law." In *Terrace,* the court found that an affidavit stating, "[a]fter review with and explanation to Borrower(s), Borrower(s) executed the Security Deed", and signed by a subscribing witness to the security deed was sufficient to cure a missing notarial seal. *Id.* at 1345–46; *see also Gordon v. Wells Fargo Bank, N.A. (In re Knight),* 504 B.R. 668, 673 (2014) (finding nearly identical language in a closing attorney's affidavit to substantially comply with the requirement for a subscribing witness affidavit, but holding the remedial

provision did not apply where the unofficial witness signature was missing); *Gordon v. OneWest Bank FSB (In re Blackmon),* 509 B.R. 415, 419–20 (Bankr. N.D.Ga.2014) (same). However, "the language of the section allowing for 'substantial compliance' suggests a liberal construction", meaning that precise language is not required for the remedial provision to be satisfied. *Terrace,* 571 F.3d at 1345 (*citing Willie v. Hines–Yelton Lumber Co.,* 167 Ga. 883, 146 S.E. 901, 904 (1929)).

Nonetheless, O.C.G.A. § 44–2–18 is inapplicable to this case. No subscribing witness affidavit was included with the Security Deed. The only pages following the Signature Page were the Waiver, the Rider, and the description of the property subject to the Security Deed, none of which testify to the either the execution or attestation of the Security Deed. The only page signed by the notary following the Signature Page was the Waiver. The language of the Waiver states that the Debtor has read the security deed and agrees to waive certain rights should a default occur. Nothing in the Waiver suggests that the signatory is testifying to the execution and attestation of the Security Deed. Further, it is the Debtor, not the witnesses, who is agreeing to the terms of the Waiver. The Waiver is meant to be an expression from the Debtor regarding the Debtor's rights, and the witness signatures indicate only that the Debtor's acknowledgment and waiver of those rights occurred in the presence of both witnesses.

In cases where the remedial provision of O.C.G.A. § 44–2–18 does not apply, a waiver such as the one described herein has been found insufficient to indicate that the deed was properly attested. *See Knight,* 504 B.R. at 674–75; *see also Blackmon,* 509 B.R. at 420–21. The attestation of the waiver cannot be substituted for the proper attestation of the security deed. *Wells*

*Fargo Bank. N.A. v. Gordon (In re Codrington)*, 292 Ga. 474, 476, 749 S.E.2d 368 (2013). "Allowing a more lenient rule ... would likely lead to more complications than it would resolve for lenders, debtors, and subsequent purchasers alike." *Id.* at 477, 749 S.E.2d 368.

### CONCLUSION

Accordingly, it is hereby **ORDERED** that First Tennessee's Motion to Dismiss is **DENIED.** It is **ORDERED FUR-** **THER** that judgment is **GRANTED** for the Trustee. First Tennessee's security interest is avoided pursuant to 11 U.S.C. § 544, and the Security Deed is preserved for the benefit of Debtor's bankruptcy estate under 11 U.S.C. §§ 550 and 551.

**IT IS ORDERED.**