[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13615

_____

In Re: Virginia Sue Lindstrom,

                                              Debtor.

_____

PINGORA LOAN SERVICING, LLC,
LOANDEPOT.COM, LLC,

                                    Plaintiffs-Appellees,

versus

CATHY L. SCARVER, Trustee,

                                    Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-03979-MLB

_____

Before WILLIAM PRYOR, Chief Judge, GRANT, and HULL, Circuit Judges.

GRANT, Circuit Judge:

Georgia property law includes a remedial statute that gives those holding defective deeds a chance to cure them. Here two loan companies argue that they have produced what the statute requires to save a problematic deed: an affidavit from a "subscribing witness."

That term, we conclude, describes only witnesses who *attest* a deed and not those who are merely involved in its *acknowledgment*. Here the loan companies concede that the attorney who produced the affidavit they rely on did not attest the deed and only certified its acknowledgment. Without a subscribing witness, the remedial statute is not satisfied, so we reverse the decision below.

I.

Defining "subscribing witness" requires a quick primer on a few key terms. When it comes to property deeds, an *attestation* is "the act of witnessing the actual execution of a paper and

subscribing one's name as a witness to that fact." *White & Co. v. Magarahan*, 87 Ga. 217, 219 (1891), *overruled on other grounds by Leeds Bldg. Prods., Inc. v. Sears Mortg. Corp.*, 267 Ga. 300 (1996). Put differently, to attest a deed means to see it signed and then add one's own signature as a declaration of that fact.

The other term to know is *acknowledgment*, which is "the act of a grantor in going before some competent officer and declaring the paper to be his deed." *Id.* To prove an acknowledgment, "the certificate of the officer that it has been made" must be added to the deed. *Id.* By that certification the official testifies to the acknowledgment, but not to the execution of the deed itself.

With that context in mind, the facts of this case are much easier to digest. When Virginia Lindstrom needed to put up collateral for a $174,500 loan from LoanDepot.com, LLC, she executed a security deed for a piece of property in Lawrenceville, Georgia. As part of that process, her sister attested the deed, signing that she had witnessed its execution. At some point later that same day, Lindstrom also acknowledged the deed to her closing attorney (a public notary), who certified the acknowledgment on the deed's final page.

Although no one recognized it then, the deed was invalid on its face. Under Georgia law, a deed must be attested by two witnesses, and at least one of them needs to be an official such as a notary or court clerk. O.C.G.A. §§ 44-2-15, 44-14-61. The attorney was a notary, but he failed to attest the deed. And his certification

of Lindstrom's acknowledgment was not enough to make the deed valid.

There is likely an easy, if unsatisfying, explanation for this oversight: a statutory amendment. Indeed, had the deed been signed only a few weeks earlier, it would have been completely valid. At that time Georgia law permitted deeds to be either attested by or acknowledged before an official. *See* O.C.G.A. § 44-14-61 (1931) (amended July 1, 2015); O.C.G.A. § 44-14-33 (1995) (amended July 1, 2015). Lindstrom had acknowledged the deed, but the old law no longer governed.

The error was discovered a few years later when Lindstrom filed for Chapter 7 bankruptcy. Under federal law a bankruptcy trustee may void a deed if it is voidable by a bona fide purchaser. *See* 11 U.S.C. § 544(a)(3). The missing attestation signature made the deed here voidable, so when the trustee managing Lindstrom's estate noticed the problem, she sued LoanDepot and Pingora Loan Servicing, LLC (who had purchased the deed from LoanDepot) to keep the property with the bankruptcy estate.

The loan companies retreated to a remedial statute in hopes of salvaging the deed. Under Georgia law, a defective deed can be cured if "a subscribing witness" signs an affidavit, before an official, stating that the deed was validly executed and attested. O.C.G.A.

§ 44-2-18.[1]   The loan companies argued that the attorney who certified the acknowledgment on the deed qualified as a "subscribing witness" because the certification process involved signing his name.  The deed, they claimed, could be validated by his affidavit, which testified to the execution and attestation of the deed.

At summary judgment, the district court held that the remedial statute saved the deed, which meant that the trustee's claims failed.  In so doing it reversed the bankruptcy court's partial grant of summary judgment to the trustee and obligated the bankruptcy court on remand to grant summary judgment to the loan companies on all claims.  The district court concluded that "a subscribing witness is the same as an attesting witness."  But it then determined that the attorney qualified as an attesting witness by relying on his signed affidavit—which showed that he had "witnessed the execution of the deed"—and on the fact that he had certified Lindstrom's acknowledgment of the deed.

---

[1] Section 44-2-18 of the Georgia Code sets out the full remedial exception:

> If a deed is neither attested by nor acknowledged before one of the officers named in Code Section 44-2-15, it may be recorded upon the affidavit of a subscribing witness, which affidavit shall be made before any one of the officers named in Code Section 44-2-15 and shall testify to the execution of the deed and its attestation according to law.  A substantial compliance with the requirements of this Code section shall be held sufficient in the absence of all suspicion of fraud.

The trustee appeals.

## II.

As the second court of review in the bankruptcy context, we apply the same standard of review the district court applied. *In re Kim*, 571 F.3d 1342, 1344 (11th Cir. 2009). We review a grant of summary judgment de novo, viewing all evidence in the light most favorable to the nonmoving party and resolving reasonable inferences in that party's favor. *In re Optical Techs., Inc.*, 246 F.3d 1332, 1334–35 (11th Cir. 2001). Summary judgment is proper when "the moving party is entitled to judgment as a matter of law." *Id.* (quotation omitted).

## III.

No one disputes that the deed was missing the required attestation by an official. As a result, the trustee can "avoid" the deed unless the loan companies find a way to save it. *See* 11 U.S.C. § 544(a)(3). They rely on section 44-2-18 of the Georgia Code, which permits them to show that the deed is valid by the "affidavit of a subscribing witness." That means the loan companies must, among other things, prove that the closing attorney who produced the affidavit was a subscribing witness to the deed.

When we interpret state law, we do so according to the State's rules of statutory interpretation. *See Robbins v. Garrison Prop. & Cas. Ins. Co.*, 809 F.3d 583, 586 (11th Cir. 2015). Under Georgia law, to understand who qualifies as a "subscribing witness," we look to the meaning of the term at the time the statute

20-13615                 Opinion of the Court                 7

was enacted. *See Seals v. State*, 311 Ga. 739, 740 (2021). Given that words never operate in a linguistic vacuum, one "primary determinant" of a term's meaning is its context, so we also consider "the other provisions of the same statute, the structure and history of the whole statute, and the other law—constitutional, statutory, and common law alike—that forms the legal background." *FDIC v. Loudermilk*, 295 Ga. 579, 588 (2014) (quotation omitted). This holistic inquiry often leads us to an ordinary meaning, but in some instances it suggests that the words are a term of art. O.C.G.A. § 1-3-1(b) (defaulting in statutory interpretation to ordinary meaning, except for "words of art or words connected with a particular trade or subject matter").

The context here reveals that "subscribing witness" is a term of art. For centuries it has carried a particular meaning when used in the context of legal documents like wills, mortgages, and security deeds. The term long predates this statute. *See Webb v. United-Am. Soda Fountain Co.*, 59 F.2d 329, 330–31 (5th Cir. 1932) (discussing *Van Cortlandt v. Tozer*, 17 Wend. 338 (N.Y. Sup. Ct. 1837)); *Harris v. Cannon*, 6 Ga. 382, 389 (1849); *Doe ex dem. Truluck v. Peeples*, 1 Ga. 1, 2–3 (1846); *Tulloch's Ex'rs v. Nichols*, 1 N.C. 4, 4 (N.C. Super. Ct. L. & Eq. 1787); *Rice v. Jones*, 8 Va. 89, 90 (1786); *Cox v. Edwards*, 14 Mass. 492, 495 (1782). And by studying this pedigree we learn that a person who attests a legal document is a subscribing witness. *See, e.g.*, *January Assignee v. Goodman*, 1 Dall. 208, 209 (Pa. Ct. Com. Pl. 1787) (describing a

document as "being attested by subscribing witnesses"); *McDill's Lessee v. McDill*, 1 Dall. 63, 63–64 (Pa. 1782).

Law dictionaries provide a helpful starting point because "subscribing witness" is a precise and ubiquitous legal term. Dictionaries from around 1850, when the remedial statute was enacted, provide a consistent definition: for a deed, a "subscribing witness" is a person who attests to its execution by signing his name to that fact. *See, e.g.*, *Subscribing Witness*, 2 John Bouvier, *A Law Dictionary* 555 (11th ed. 1862) ("One who subscribes his name to a writing in order to be able at a future time to prove its due execution; an attesting witness."); *Subscribing Witness*, Archibald Brown, *A New Law Dictionary* 345 (1874) ("He who witnesses or attests the signature of a party to an instrument, and in testimony thereof subscribes his own name to the document."); *Subscribing Witness*, 2 Stewart Rapalje & Robert L. Lawrence, *A Dictionary of American and English Law* 1230 (1888) ("He who witnesses or attests the signature of a party to an instrument, and in testimony thereof subscribes his own name to the document."); *see also Subscription*, 2 Alexander M. Burrill, *A New Law Dictionary and Glossary* 952 (1851) ("The writing of the name or signature under, or at the foot of an instrument, by way of execution or attestation.").

This means that attestation—signing as a witness to a deed's execution—is the only way a person can qualify as a "subscribing witness." As a result, the terms "attesting witness" and "subscribing witness" are synonymous. *See, e.g.*, *Attestation*, 1

John Bouvier, *A Law Dictionary* 103 (1st ed. 1839) ("[T]he act of witnessing an instrument of writing, at the request of the party making the same, and subscribing it as a witness."); *Attestation*, 1 Alexander M. Burrill, *A New Law Dictionary and Glossary* 112 (1850) ("The testifying to, or witnessing the signature or execution of a deed or other instrument, by the witnesses; including the subscription of their names."); *Attesting Witness*, 1 Stewart Rapalje & Robert L. Lawrence, *A Dictionary of American and English Law* 96 (1888) ("One who, at the request of the parties to a written instrument, signs his name thereto as a witness to the execution thereof.").

The Supreme Court of Georgia has reached the same conclusion for nearly two hundred years. In one of its earliest cases, decided in 1846, that court described a deed as having been validated in part by "the attestation of two subscribing witnesses." *Truluck*, 1 Ga. at 2–3. And in 1891, the court defined attestation as "the act of witnessing the actual execution of a paper and subscribing one's name as a witness to that fact." *White & Co.*, 87 Ga. at 219. Four years after that, the court used the terms "attesting witness" and "subscribing witness" interchangeably. *McVicker v. Conkle*, 96 Ga. 584, 585 (1895). As one example, it explained that "an instrument purporting to be attested by a *subscribing witness*" or witnesses must be proved by their testimony unless their absence—"the absence of all the *attesting witnesses*"—can be accounted for. *Id.* (emphasis added).

The broader remedial scheme also confirms that a subscribing witness is a person who attests a deed. The subscribing-witness statute is paired with another remedial statute, which permits any "third person" to remedy a deed—but only when every subscribing witness is unreachable. O.C.G.A. § 44-2-19. And the third person's affidavit must contain different information than a subscribing witness's affidavit: the third party must testify "to the genuineness of the handwriting of the subscribing witness," instead of to the deed's "attestation according to law." *Compare id.* § 44-2-19, *with id.* § 44-2-18. This variation only makes sense if the subscribing witness's signature plays the same role as an attestation in proving the validity of the deed—acting as evidence of the deed's proper execution. Comparing these remedial statutes therefore confirms that a subscribing witness always attests the deed; otherwise her signature would not be written proof that the deed was properly attested.

The loan companies argue that certifying a deed's acknowledgment also transforms a person into a subscribing witness, but attestation and acknowledgment are not equivalent. For one thing, Georgia's recording statute now rejects acknowledged deeds. And for another, even though a deed and its certification are related, the attestation of one document "cannot be substituted for the proper attestation" of any related or integrated document. *See Wells Fargo Bank, N.A. v. Gordon*, 292 Ga. 474, 476 (2013).

Indeed, the Georgia Supreme Court has long distinguished between a signature of a subscribing witness and an official's certification of an acknowledgment.  Shortly before the remedial statute was first enacted, the Georgia Supreme Court dealt with a deed that included "the attestation of two subscribing witnesses, accompanied with the acknowledgment of the feoffor in the presence of the magistrate." *Truluck*, 1 Ga. at 2–3.  The distinction the court drew is unmistakable.  Only the two individuals who had attested the deed—and not the magistrate who had certified the acknowledgment of the deed—qualified as subscribing witnesses. *See White & Co.*, 87 Ga. at 219.

That is grim news for the loan companies.  The closing attorney never attested the deed.  He certified that Lindstrom acknowledged the deed, but that is a separate—and now defunct— method of validating a deed.[2]  The district court thus erred when it concluded that the attorney's certification, bolstered by content in

---

[2] This acknowledgment creates another problem for the loan companies.  The remedial statute only applies to deeds "neither attested by *nor acknowledged before*" an officer. *See* O.C.G.A. § 44-2-18 (emphasis added).  That exclusion means that the companies' acknowledged deed enters limbo—no longer good enough to be recorded, but too good to be saved.  When the Georgia assembly cut acknowledgment from the recording statute, it failed to expand the remedial statute to cover acknowledged deeds. *See* O.C.G.A. § 44-14-61.  That's likely an oversight, for if anything an acknowledged deed is more trustworthy, not less—the lineage of acknowledgment traces back nearly 500 years to England under Henry VIII. *See Webb*, 59 F.2d at 331.  So it might "be well for the general assembly to consider the wisdom of adopting another" remedial rule for acknowledged deeds. *See McVicker*, 96 Ga. at 588.

his affidavit, qualified him as a subscribing witness. Although subscribing witnesses must also produce a sufficient affidavit to satisfy the remedial statute, the only way to qualify as a subscribing witness is to attest the deed itself. The closing attorney did not. So he is not a subscribing witness, and the loan companies' attempt to save the deed fails.

★    ★    ★

A person becomes a subscribing witness only when she attests a deed—when she signs her name as a witness to its execution. *See White & Co.*, 87 Ga. at 219. Because the closing attorney whose signature Pingora and LoanDepot rely on did not attest the deed, they have not produced an affidavit by a subscribing witness as required by section 44-2-18 of the Georgia Code. As a result, the loan companies' interest in Lindstrom's real property is voidable by the trustee because the security deed is defective. We therefore **REVERSE** the decision of the district court and **REMAND** for proceedings consistent with this opinion.